Chestley Labron MILLER, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 13–86–247–CR to 13–86–250–CR.

Court of Appeals of Texas,
Corpus Christi.

May 14, 1987.

Joseph Connors, III, McAllen, J.M. Ramirez, Edinburg, for appellant.

Gene Guerra, Theodore C. Hake, Dist. Attys. Office, Edinburg, for appellee.

Before NYE, C.J., and KENNEDY and DORSEY, JJ.

## OPINION

NYE, Chief Justice.

In a consolidated jury trial appellant was convicted of four aggravated assaults. Tex.Penal Code Ann. § 22.02 (Vernon Supp.1987). He was sentenced to four two-year prison terms, three of which are to run concurrently after he completes his first two-year term. Appellant brings seventeen points of error.

At trial, the State presented evidence that appellant fired his shotgun at four Mexican nationals who had crossed the Rio Grande and were on land leased by appellant's father. One man was wounded as he fled toward the river and later received medical attention in Mexico. Another drowned as he tried to swim back to Mexico. The other two were not harmed.

By his fifteenth and sixteenth points of error, appellant asserts he was denied a fair trial because the prosecutor used his peremptory challenges to exclude members of appellant's race from the petit jury.

Shortly after appellant's trial, the United States Supreme Court handed down its landmark decision in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). There the Supreme Court reiterated that the equal protection clause prohibits the State's use of peremptory jury strikes to exclude blacks from a petit jury solely because of their race, and held that a defendant may now make a prima facie showing of purposeful racial discrimination based upon all the relevant circumstances of his own case and thereby require the State to provide a benign explanation for its use of strikes against each black juror. Appellant seeks to invoke the protections of *Batson* in this appeal.

We first note that *Batson* is to be applied retroactively to all cases pending on direct review or not yet final at the time *Batson* was decided, which includes this case. *Griffith v. Kentucky*, — U.S. —, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987); *Henry v. State*, 729 S.W.2d 732, 734 (Tex.Crim.

App.1987). Appellant filed a motion for new trial only a week after *Batson* was decided. Because *Batson* was issued after appellant's trial was concluded, appellant's motion for new trial properly brought the matter to the trial court's attention and preserved the issue for review by the appellate courts. *See Henry*, 729 S.W.2d at 736.

■ In order to establish a prima facie case of purposeful discrimination, the defendant initially must show that he is a member of a racial group capable of being singled out for different treatment, *Rodgers v. State*, 725 S.W.2d 477, 479 (Tex.App. —Houston [1st Dist.] 1987, pet. filed), and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. The defendant then may rely on the fact that peremptory challenges constitute a jury selection process which permits those to discriminate who are of a mind to discriminate. Finally, the defendant must show that these facts and other relevant circumstances raise the inference that the prosecutor excluded members of defendant's race from the venire because of their race. *Batson*, 106 S.Ct. at 1723; *Keeton v. State*, 724 S.W.2d 58, 65 (Tex.Crim.App.1987); *Rodgers*, 725 S.W.2d at 479.

The equal protection clause of the fourteenth amendment is universal in its application "to all persons ... without regard to any difference of race, of color, or of nationality; and the equal protection of the laws is a pledge of the protection of equal laws." *Yick Wo v. Hopkins*, 118 U.S. 356, 369, 6 S.Ct. 1064, 1070, 30 L.Ed. 220 (1886). Justice Powell wrote, in Regents of University of *California v. Bakke*, 438 U.S. 265, 289–90, 98 S.Ct. 2733, 2747–48, 57 L.Ed.2d 750 (1978), that "[t]he guarantee of equal protection cannot mean one thing when applied to one individual and something else when applied to a person of another color. If both are not accorded the same protection, then it is not equal."[1] *See also Doe-*

---

1. The equal protection clause has been applied to the exclusion of ethnic groups in the jury selection process in Texas. *Hernandez v. Texas*, 347 U.S. 475, 479, 74 S.Ct. 667, 671, 98 L.Ed. 866 (1954) (Mexican-Americans effectively excluded from service on jury commissions and grand

*pel v. United States,* 434 A.2d 449, 457–59 (D.C.1981) (involved white man charged with murder and rape of a black woman, tried by an all-black jury, who asserted peremptory strikes were used to remove whites from panel; equal protection analysis, albeit under *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1964), applied).

At the hearing on appellant's motion for new trial, defense counsel questioned the prosecuting attorney about his peremptory challenges. The prosecutor testified that he made ten peremptory strikes, seven against persons with Anglo-sounding surnames and three strikes against Hispanic-sounding surnames. Defense counsel then called five of these seven veniremen who all testified that they were Anglo. The other two of the seven did not appear at the hearing, although they were subpoenaed. The prosecutor did not offer any reason for his strikes. Both counsel then presented argument. The trial court overruled appellant's motion for new trial without comment.

At this hearing, the State argued appellant could not raise this issue in a motion for new trial because such a ground was not provided for in Tex.Code Crim.Proc. Ann. art. 40.03 (Vernon 1979). The trial court overruled the State's objection and allowed appellant to present evidence and argument. However, it is apparent from the record that the trial court considered the issue within the context of an ordinary motion for new trial, in which the movant bears the burden of production and persuasion.

Under *Batson,* the defendant carries the burden of persuasion on the ultimate issue of purposeful discrimination. Yet, *Batson* now allows a defendant to "make out a prima facie case of purposeful discrimination by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." *Batson,* 106 S.Ct. at 1721. Once the defendant has made the "requisite showing," the burden

of production of the evidence shifts to the State to provide a neutral explanation for each of the strikes which relates to the particular case to be tried.

The Court of Criminal Appeals explains the *Batson* procedure in *Keeton,* 724 S.W.2d at 64–65:

If the defendant raises an inference of purposeful discrimination through the State's use of its peremptory strikes, *and* the trial court determines that a prima facie case of discrimination exists, then the burden shifts to the prosecutor who must come forward with a neutral explanation for the challenges. The trial court must then determine *whether despite the State's explanation,* the defendant has established purposeful discrimination.... By largely judging credibility of the prosecutor, content of the explanation and all other surrounding facts and circumstances, *the trial judge must make a fact finding concerning purposeful discrimination* which should be given great deference by a reviewing court. (emphasis ours.)

■ Though the trial court conducted a hearing on the motion for new trial, it is obvious from the record that the trial court did not conduct a *"Batson* hearing." The record is unclear as to the basis of the trial court's decision to overrule appellant's motion for new trial. No findings of fact or conclusions of law are before us. The trial court did not require the State to come forward with a neutral explanation after hearing evidence on appellant's claim. We cannot determine from this record whether the trial court determined that appellant had not established a prima facie case or whether the trial court determined that appellant failed to carry the burden for an ordinary motion for new trial. In all deference to the trial court, the issue in this case arose only a few days after *Batson* was handed down. *Batson* made a radical change in the law, and, at the time, few

juries held unconstitutional). The Court of Criminal Appeals has interpreted the equal protection clause to apply to the effective exclusion of members of a religious group (Roman

Catholics) from jury service. *Juarez v. State,* 277 S.W. 1091 (Tex.Crim.App.1925); *see also Garza v. State,* 725 S.W.2d 482 (Tex.App.—Corpus Christi, 1987, no pet.).

procedural guidelines had been set forth for the trial courts to follow.

Although the issue was raised and evidence was presented, the trial court did not make a determination about the existence of purposeful discrimination in the State's use of jury strikes in this case. This determination must be made when the use of peremptory strikes is challenged. As in *Keeton,* we are unable to determine from this record whether the trial court erred in failing to require the prosecutor to come forward with a neutral explanation, or erred in not following the full procedure outlined in *Batson* and *Keeton.*

Therefore, in an abundance of caution to safeguard the important constitutional guarantees, we remand this case to the trial court to conduct a proper *"Batson* hearing." At the hearing, the trial court must make a legal determination whether appellant has established a prima facie case of racial discrimination. If the trial court is satisfied that appellant has made the requisite showing, the State will then be required to come forth with a neutral explanation for the use of its strikes. The trial court should then make a fact finding as to purposeful discrimination *vel non* as outlined herein. The trial court should set forth its determinations as findings of fact and conclusions of law and enter them in the record to be returned to this Court.

This appeal is accordingly ABATED and REMANDED to the trial court with instructions to conduct further proceedings consistent with this opinion. The record and result of those proceedings are then to be forwarded to this Court along with the trial court's findings of fact and conclusions of law within thirty days from the date of this order. It is so ordered.