Robert Ray YBARRA, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–88–00519–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

April 6, 1989.

Loren A. Detamore, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Timothy G. Taft, Cheryl Barber, and Lisa Amos, Asst. Dist. Attys., Houston, for appellee.

Before EVANS, C.J., and O'CONNOR and DUGGAN, JJ.

O'CONNOR, Justice.

A jury convicted Robert Ray Ybarra, appellant, of delivery of a controlled substance, cocaine, and assessed punishment at 50 years confinement and a fine of $5,000. Appellant challenges the verdict with five points of error.

Officer Gray, an undercover officer, testified that on March 4, 1987, he went to the Horse Shoe Lounge in response to a complaint about the sale of narcotics. At the bar, Gray met a man named Cash (later identified as McCall) and asked him where he could buy narcotics. Cash said several people who frequented the bar sold narcotics. A few minutes later, Cash introduced Gray to appellant as "Robert" and his companion as "Bob" (later identified as Robert Miller). Appellant told Gray he could get him a quarter gram of cocaine for $20. Gray gave appellant $20, and appellant and Miller left the bar.

The two returned about 30 minutes later. Appellant suggested they go into the club's storage room. After Gray, Miller, and appellant were in the room, appellant opened his mouth. He had the cocaine in a small plastic bag on his tongue. Appellant took the cocaine out of his mouth and told Miller to get down their favorite mirror. Miller retrieved a mirror from a shelf and handed it to appellant. Appellant poured the cocaine onto the mirror and gave it to Gray. Gray said he did not have a razor blade to crush the cocaine. Appellant took a disposable razor from the shelf tried to break it open to get a blade, but cut his finger. Gray put the cocaine in a small piece of paper, folded it, and put it in his wallet.

Gray estimated the amount of cocaine to be between a quarter and a half gram.

After putting the cocaine in his wallet, Gray left the club and went to his car. Gray knew appellant and Miller were watching, so he leaned over and acted as if he were using the cocaine. Appellant and Miller got into a vehicle and drove off.

Officer Tippy testified that he was part of a raid team that arrested eight or nine persons at the Horse Shoe Lounge on March 5, 1987. Appellant was not among those arrested. On March 6, appellant called the station "when he was aware that all his friends had got arrested the night before and wanted to arrange a meeting with [the officers]." Tippy and Gray met appellant that afternoon. Appellant told them that he had been an informant for Officers Kilty and Medley. Tippy called Kilty who told him appellant had contacted him a number of times, but that he was not an informant. Upon the advice of their sergeant, Tippy and Gray arrested appellant later that day.

Appellant gave a different account of the events at the bar on March 4, 1987. According to appellant, he went into the bar alone. He knew Miller from earlier visits to the bar. Miller and Gray sat down at his table and talked about a drug transaction. He went outside to get some air. When he returned, he went with Miller and Gray into the storage room and saw Miller give Gray the drugs. All three then left the club separately.

Appellant said he gave Kilty and Medley names of persons involved with drugs. On one occasion, he purchased heroin for them using money they gave him. Appellant told them that Johnnie Ortega was a dealer. According to appellant, the officers checked on Ortega and found that he was "a big pusher." Ortega was among those arrested on March 5.

In his first point of error, appellant contends the trial court erred in admitting evidence of a deferred adjudication in an unrelated case because the case was on appeal.

In 1986, appellant was indicted for burglary and placed on six years deferred ad-

judication under the deferred adjudication provisions of Tex.Code Crim.P.Ann. art. 42.12, sec.3d (Vernon Supp.1989). In January of 1988, the trial court revoked the probation and sentenced appellant to serve 10 years confinement. Appellant gave notice of appeal in the burglary case, which the trial court denied by written order. In March of 1988, appellant filed an application for writ of mandamus in the Fourteenth Court of Appeals. On June 16, 1988, the Fourteenth Court granted appellant's motion for leave to file a mandamus and permitted him to proceed with the appeal of the burglary case. At that time, the case had not been assigned to a particular court of appeals pursuant to Tex.Gov't Code Ann. sec. 22.202 (Vernon 1988).

This case went to trial on June 1, 1988. On June 6, 1988, when this case reached the punishment stage, the trial court permitted the State to introduce evidence of the burglary conviction as evidence of appellant's prior criminal record.

The Code of Criminal Procedure tells us when a defendant's criminal record is admissible:

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may, as permitted by the Rules of Evidence, be offered by the state and the defendant as to the prior criminal record of the defendant, his general reputation and his character. The term prior criminal record means a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged.

Tex.Code Crim.P.Ann. art. 37.07, sec. 3(a) (Vernon Supp.1989). The Court of Criminal Appeals held in *Brown v. State,* 716 S.W.2d 939, 950 (Tex.Crim.App.1986), a "pending order of deferred adjudication" was admissible at the penalty stage of a bifurcated trial as a prior criminal record.

The issue for this Court is whether the adjudication of appellant's guilt in the burglary case, which was on appeal, was admissible as a part of his criminal record. Appellant cites *Hunter v. State,* 640 S.W. 2d 656, 658–59 (Tex.App.—El Paso 1982,

pet. ref'd), in support of his argument that the appeal of the conviction prevented its admission. The El Paso Court of Appeals held evidence of a deferred adjudication was inadmissible when the resulting conviction was the subject of an appeal.

■ The State argues *Hunter* is distinguishable because the State merely introduced evidence of the deferred adjudication and not of the final determination of guilt. We do not find this distinction persuasive. What evidence the State introduces on a matter does not determine its status under the Code of Criminal Procedure. As the El Paso court noted:

> [T]he chances of obtaining reversal may be slight, but whether such a prior conviction is admissible under Article 37.07 does not depend upon appellate probabilities but upon the proper characterization of the status of the prior cause.

*Hunter,* 640 S.W.2d at 660 (op. on reh'g).

The Rules of Criminal Evidence provide that the "[p]endency of an appeal renders evidence of a conviction inadmissible." Tex.R.Crim.Evid. 609(e). The *Hunter* court wrote:

> The probated or suspended history made admissible under Article 37.07 contemplates a sentence which is still in effect and has not been revoked or one which has been successfully completed by the probationer. Once a probated or suspended sentence has been revoked, a final conviction is necessary for its admissibility at the punishment phase of a trial for some other offense.... Following revocation and timely notice of appeal, Appellant stood in the same posture as one who had never been placed on probation and whose conviction was not final at the time of his subsequent trial.

*Hunter,* 640 S.W.2d at 659; *compare Evans v. State,* 690 S.W.2d 112, 114–15 (Tex. App.—El Paso 1985, pet. ref'd) (distinguishing an appeal from revocation of probation).

In its discussion of whether deferred adjudication is admissible as a criminal record, the Texas Court of Criminal Appeals stated:

There can be little question if a defendant's "probation" is revoked and the court proceeds to an adjudication of guilt under the procedure outlined in section 3d, *and the ensuing conviction becomes final,* that such conviction may be introduced at the penalty stage of a subsequent trial for another offense as part of the defendant's "prior criminal record." *Brown,* 716 S.W.2d at 949. (Emphasis added.)

■ When appellant filed a notice of appeal in the burglary case, the deferred adjudication was no longer pending, and the conviction was not final. At the hearing on sentencing in this case, the burglary case was neither admissible as a deferred adjudication nor as a final conviction.

■ Rule 81(b)(2), Tex.R.App.P., requires this Court to reverse unless we find, beyond a reasonable doubt, the error did not increase appellant's punishment. The trial court instructed the jury to assess punishment within a range of five years to 99 years, or life, with a fine of not more than $20,000. The prosecutor asked the jury to assess punishment at a minimum of 20 years. Appellant asked for a probated sentence. Because the jury assessed punishment at 50 years and a fine of $5,000, this Court cannot find beyond a reasonable doubt that appellant's deferred adjudication did not add to his punishment.

We sustain the first point of error.

In his second point of error, appellant contends the trial court should have admitted documentary evidence of Miller's indictment and plea of guilty. Appellant says these documents prove Miller was convicted of and confessed to actual transfer of the controlled substance. This, he argues, contradicts Officer Gray's testimony that appellant actually gave the cocaine to Gray and raises questions about Gray's credibility.

Appellant preserved Miller's indictments and convictions in a bill of exceptions. Two documents relate to the March 4 offense: a copy of the indictment that charged Miller with delivery of cocaine by actual transfer, constructive transfer, and offer to sell; and a copy of Miller's plea of guilty to delivery by actual transfer. Two documents relate to a March 5 offense: a copy of the indictment that charged Miller with delivery of cocaine by actual transfer, constructive transfer, and offer to sell; and a copy of Miller's plea of guilty to delivery by offer to sell. Only the March 4 documents could have had any relevance to the case here. Any crime committed by Miller on March 5, the day after this offense, cannot conflict with appellant's conviction.

■ The State correctly points out that third-party confessions are admissible only when the guilt of the third party is inconsistent with the guilt of the accused. *Perez v. State,* 590 S.W.2d 474, 480 (Tex.Crim.App.1979). The State argues that the trial court's refusal to permit appellant to introduce evidence that Miller pleaded guilty to *actual* transfer was not error because Miller could have been convicted as a party to the offense. The court properly excluded the evidence.

We overrule the second point of error.

In his third point of error, appellant contests the trial court's refusal to admit evidence about Johnnie Ortega's role in the sale of narcotics. Appellant contends the complaint and motion for dismissal in a case against Johnnie Ortega were relevant to show appellant's credibility. Appellant cites no cases in support of his point of error.

■ Appellant tried to prove he was an informant for the police. According to appellant's testimony, he gave the police information about Ortega. Appellant argues that Ortega's arrest and the dismissal of Ortega's case supports appellant's claim that Ortega sold narcotics. Appellant also contends the district attorney dismissed Ortega's case because Ortega had a "contract" to supply information to the district attorney's office.

Rule 401, Tex.R.Crim.Evid., provides relevant evidence is

evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action

more probable or less probable than it would be without the evidence.

Even if we accept appellant's assertion that the evidence is relevant, the trial court properly excluded the evidence under Rule 403. Under that rule, relevant evidence:

may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, *confusion of the issues, or misleading the jury....* [Emphasis added.]

Appellant could prove he was a police informant and still be subject to conviction for delivery of a controlled substance. Whether Ortega is a drug dealer or a police informant is tangential to the central issue of appellant's participation in the delivery of cocaine to Gray.

We overrule the third point of error.

█ In the fourth point of error, appellant asserts the trial court erred in charging the jury on constructive transfer of a controlled substance when no evidence supported that charge. Appellant submitted a written objection to the instruction on constructive transfer. Appellant argues the instruction on constructive transfer repeated the statement about delivery. The unwarranted repetition of delivery was a comment on the evidence and placed an undue emphasis on the wording in the indictment.

The trial court must charge the jury on allegations in the indictment that are supported by the evidence. *Booker v. State,* 523 S.W.2d 413, 415 (Tex.Crim.App.1975); *see* Tex.Code Crim.P.Ann. art. 36.14 (Vernon Supp.1989). The indictment alleged delivery by actual transfer, constructive transfer, and by offer to sell. The charge defined delivery as both actual and constructive transfer. The charge permitted the jury to convict if the jury found delivery by either means. Neither the charge nor the indictment invoked the law of parties.

In *Conaway v. State,* 738 S.W.2d 692 (Tex.Crim.App.1987), the court addressed the issue of actual versus constructive transfer and the appropriateness of convicting on one when the proof supported the other. In that case, defendant sold some marijuana to an undercover police officer by handing it to a third party who in turn handed it to the officer. The indictment charged the defendant with *actual* transfer of a controlled substance. The charge to the jury referred to the offense "as charged in the indictment." The Court of Criminal Appeals reversed because the only proof of transfer was a *constructive* transfer, and the charge did not instruct the jury on the law of parties. *Id.* at 695.

Officer Gray testified appellant told him he could get him cocaine. After Gray gave appellant $20, appellant left with Miller. A short time later, he returned with Miller. Gray said appellant handed him the cocaine. Appellant acknowledged everything except that he told the officer he could get cocaine or that he gave the cocaine to him. According to appellant, Miller arranged the deal and gave the narcotics to Gray.

The evidence supports both charges. The trial court told the jury in this case to convict appellant if it found him guilty of *actual* or *constructive* transfer. If the jury believed all of Officer Gray's testimony (that appellant told him he could get cocaine for him and appellant delivered the cocaine to him), they could have convicted appellant of *actual* transfer. Or, if the jury believed part of Officer Gray's testimony (that appellant told him he could get cocaine for him), and part of appellant's testimony (that Miller handed the cocaine to the officer), the jury could have convicted appellant of *constructive* delivery of the cocaine.

We overrule the fourth point of error.

█ Appellant's fifth point of error asserts the trial court erred when it refused to instruct the jury that the arresting officer is required to present the accused to a magistrate. *See* Tex.Code Crim.P.Ann. art. 15.16 (Vernon 1977). Appellant argues that if the jury had known the law required the officer to immediately take him before the magistrate, the jury would have questioned the officer's other testimony. Appellant cites no cases in support of his point of error.

At the request of appellant's counsel, Officer Tippy read the statement on the arrest warrant ordering the officer executing the warrant to take the suspect before the issuing magistrate. Tippy agreed that neither he nor Officer Gray took appellant before a magistrate. Even if the trial court should have instructed the jury about the law about arrests, the jury already knew the warrant required the officers to take appellant before a magistrate.

We overrule the fifth point of error.

The judgment of the trial court is reversed as to punishment because we sustained appellant's first point of error. The judgment as to conviction is affirmed; the cause is remanded for new trial on the issue of punishment only. Tex.Code Crim. P.Ann. art. 44.29(b) (Vernon Supp.1989).