**Danny Ray TAYLOR, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–94–175–CR.**

Court of Appeals of Texas,
Fort Worth.

Dec. 14, 1995.

Elizabeth Horan, J. Rex Barnett, Fort Worth, for Appellant.

Tim Curry, Criminal District Attorney; Betty Marshall and Charles M. Mallin, Assistant Chiefs of Appellate Section, Michael Parrish, Karen Lynn, Assistant Criminal District Attorneys, Fort Worth, for Appellee.

Before DAUPHINOT, RICHARDS, BRIGHAM, JJ., and PAUL W. NYE, J. (Retired) (Sitting by Assignment).

## OPINION

NYE, Justice (Retired) (Sitting by Assignment)

Appellant Danny Ray Taylor entered a plea of guilty for the offense of aggravated robbery with a deadly weapon, *see* TEX.PE-NAL CODE ANN. § 29.03 (Vernon 1994), for which the jury assessed punishment at seventy years' confinement in the Institutional Division of the Texas Department of Criminal Justice. In three points of error, appellant contends that the trial court erred in:

(1) allowing the introduction of evidence that appellant was on deferred adjudication probation at the time the alleged offense was committed; (2) permitting the State to encourage the jury to consider the existence of parole laws in assessing punishment; and (3) finding that the State furnished race-neutral reasons for a peremptory strike against a venireperson.

We sustain appellant's first point of error and reverse the judgment of the trial court on punishment. The judgment on the conviction is affirmed and this case is remanded for a new trial on the issue of punishment only.

## FACTUAL BACKGROUND

At approximately 1:20 p.m. on March 4, 1993, Judy Pierce drove her mother-in-law to an appointment at a beauty salon located at 6000 Western Place in Fort Worth, Tarrant County, Texas. After dropping off her mother-in-law, Pierce ran several errands, then returned to the parking lot of the Western Building around 1:45 p.m. Pierce parked her car and began transferring some packages from the trunk to the front seat when she saw appellant walking toward her. After transferring the packages, Pierce started walking toward the Western Building with her purse over her shoulder. Appellant approached Pierce from behind, produced a gun, and ordered her to give up the purse or he would shoot. As Pierce turned to one side, appellant shot her in the back, just below the waist, and took her purse.

Richard Ray Hood and John Armes, members of a private security company located in the Western Building, witnessed the shooting. While Armes administered first aid to Pierce, Hood and another security guard, Darrell Johnson, pursued appellant on foot. The chase was discontinued, however, when appellant turned and pointed the gun at the two pursuers. Appellant then ran across Interstate 30 and disappeared from sight. Appellant was arrested shortly thereafter at a nearby apartment complex following a search by several Fort Worth police officers. At trial, appellant entered a plea of guilty for the offense of aggravated robbery with a deadly weapon, to wit: a firearm.

## ADMISSION OF EVIDENCE

In his first point of error, appellant contends that the trial court erred in admitting evidence of a deferred adjudication that was on appeal in an unrelated case.

In 1993, appellant was indicted for unauthorized use of a motor vehicle and placed on deferred adjudication in accordance with article 42.12, section 5 of the Texas Code of Criminal Procedure. TEX.CODE CRIM.PROC. ANN. art. 42.12, § 5 (Vernon Supp.1995). Later, the trial court revoked the probation and imposed a sentence of confinement. At the time of appellant's trial for aggravated robbery, an appeal was pending in the deferred adjudication case. During the punishment stage of appellant's aggravated robbery trial, the trial court permitted the State to introduce evidence of the deferred adjudication as evidence of appellant's prior criminal record. Appellant contends that the evidence was admitted in violation of article 37.07 of the Texas Code of Criminal Procedure. We agree.

The version of article 37.07, section (3)(a) in effect on the date of the offense provided that:

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may, as permitted by the Rules of Evidence, be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including the prior criminal record of the defendant, his general reputation and his character. The term prior criminal record means a *final conviction* in a court of record, or *a probated or suspended sentence* that has occurred prior to trial, or any final conviction material to the offense charged.

Act of May 28, 1989, 71st Leg., R.S., ch. 785, § 4.04, 1989 Tex.Gen.Laws 3471, 3492, *amended by* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 5.05, 1993 Tex.Gen.Laws 3586, 3759 (current version at TEX.CODE CRIM.PROC.ANN. art. 37.07 § (3)(a) (Vernon Supp.1995)). According to appellant, because the deferred adjudication case was on appeal, there was no final conviction or probated or suspended sentence to trigger the application of article 37.07, section (3)(a).

In response, the State, albeit without supporting case law, makes a compelling argument that the outcome occasioned by appellant's argument is "ludicrous." The State correctly points out that if a defendant is placed on deferred adjudication and successfully lives out the conditions of his probation, then evidence of that deferred adjudication would be admissible in a subsequent trial for another offense. *See* Tex.Code Crim.Proc. Ann. art. 42.12, § 5(c)(1) (Vernon Supp.1995). Likewise, a defendant unsuccessful in living out the conditions of deferred adjudication status would be vulnerable to a revelation of that fact at a subsequent trial. *Id.; see also Brown v. State*, 716 S.W.2d 939, 949 (Tex. Crim.App.1986). Finally, a defendant presently serving out the conditions of an unexpired deferred adjudication sentence would be subject to the provisions of article 37.07, section 3(a). The only time, according to appellant's argument, that evidence of a defendant's prior deferred adjudication status would not be admissible at a subsequent trial would be in the limited instance where, as in the instant case, an appeal from the adjudication was pending at the time of trial. The point of the State's argument is that a defendant appealing from a deferred adjudication should be treated no differently than a defendant appealing from "ordinary" probation. The State concedes, however, that its position is contrary to the recognized present case law.

Two cases are squarely on point. The first, *Hunter v. State*, 640 S.W.2d 656 (Tex. App.—El Paso 1982, pet. ref'd), involved an appeal from a conviction for involuntary manslaughter. At the punishment phase of the involuntary manslaughter trial, the State introduced evidence that the defendant had entered a plea of guilty to an indictment in a prior unrelated burglary case and that adjudication of guilt was deferred and the defendant was placed on probation for seven years. *Id.* at 657–58. Probation was subsequently revoked, a finding of guilt entered, and a sentence of three years' confinement imposed. An appeal on the burglary and the revocation of probation were pending at the time of the involuntary manslaughter trial. *Id.* at 658. On appeal from the involuntary manslaughter conviction, the court of appeals found that the admission of this evidence constituted harmful error and reversed the case for a new trial. *Id.* at 659.

In reaching its decision, the *Hunter* court recognized that the admissibility of a person's "prior criminal record" under former article 37.07, section 3(a), was limited to final convictions from courts of record, probated or suspended sentences that occurred prior to trial, and final convictions material to the offense charged. *Id.* at 658. The court then stated:

> [The defendant's] timely appeals on the merits of his burglary indictment and the revocation of his probation removed that proceeding from the probated or suspended sentence category of Article 37.07. The probated or suspended sentence history made admissible under Article 37.07 contemplates a sentence which is still in effect and has not been revoked or one which has been successfully completed by the probationer. Once a probated sentence has been revoked, a final conviction is necessary for its admissibility at the punishment phase of a trial for some other offense....
>
> ....
>
> ... Following revocation and timely notice of appeal, [the defendant stands] in the same posture as one who had never been placed on probation and whose conviction was not final at the time of his subsequent trial.

*Id.* at 658–59. On rehearing, in which the State urged reconsideration of the prior holding, the *Hunter* court stated further:

> As indicated in our earlier opinion, Article 42.12, sec. 3d(b) [of the Texas Code of Criminal Procedure], states that after an adjudication of guilt, all proceedings, including assessment of punishment, pronouncement of sentence, granting of probation, and defendant's appeal continue as if the adjudication of guilt had not been deferred. The probation is not simply revoked, it is annulled. Appellant is in the same posture he was in on the day he entered his plea. His appeal goes to the initial proceeding; he has, in fact, no right to appeal the decision to proceed to an adjudication of guilt. Should this appeal be successful, the entire conviction is reversed. This is distinct from an individual

who appeals from the revocation of an ordinary probation under Section 3, and Subsections 3a and 3c [of article 42.12]. In those cases, a successful appeal places the individual back on probation.

The appeal following revocation of a deferred adjudication probation is in essence an appeal from a guilty plea, and the range of errors which may be raised are accordingly restricted. As a practical matter, the chances of obtaining reversal may be slight, but whether such a prior conviction is admissible under Article 37.07 does not depend upon appellate probabilities but upon the proper characterization of the status of the prior cause.

[The defendant's] prior conviction was not final at the time of this trial. Nor was it a probated or suspended sentence case, that aspect having been nullified by the decision to proceed with an adjudication of guilt. The conviction was not admissible under Article 37.07.

*Hunter*, 640 S.W.2d at 660 (op. on reh'g).

In a subsequent case, *Ybarra v. State*, 768 S.W.2d 491 (Tex.App.—Houston [1st Dist.] 1989, no pet.), the defendant, who was on trial for delivery of a controlled substance, had previously been placed on deferred adjudication for burglary. Revocation of the deferred adjudication was on appeal at the time of the defendant's trial. Nonetheless, over objection, the State was permitted to introduce evidence of the defendant's deferred adjudication status. *Id.* at 492–93. Relying on the rationale in *Hunter*, the court of appeals ultimately determined that the admission of such evidence constituted harmful error and reversed and remanded the case for a new punishment hearing. *Id.* at 496. Most notably, the court in *Ybarra* found that a pending appeal from the revocation of deferred adjudication is inadmissible and not part of a person's "prior criminal record" because "[w]hen [the defendant] filed a notice of appeal in the burglary case, the deferred adjudication was no longer pending, and the conviction was not final [for purposes of article 37.07]. At the hearing on sentencing ... the burglary case was neither admissible as a deferred adjudication nor as a final conviction." *Id.* at 494.

In accordance with *Hunter* and *Ybarra*, we find that evidence of appellant's prior deferred adjudication, pending appeal, was inadmissible. Despite the State's compelling argument, we hold that where a defendant appeals from the revocation of deferred adjudication, evidence of the fact that the defendant was placed on deferred adjudication does not constitute a "final conviction" or "suspended or probated sentence" required to trigger admissibility under article 37.07. Unless this case attracts the attention of the Texas Court of Criminal Appeals, which would then find that a defendant appealing from a deferred adjudication should be treated no differently than a defendant appealing from an "ordinary" probation, we are in agreement with the reasoning of the *Hunter* and *Ybarra* courts. We therefore hold that the trial court erred in permitting the State to introduce the evidence that the appellant was on deferred adjudication probation at the time the alleged offense was committed during the punishment phase of appellant's trial.

■ Having found error in the proceedings below, our analysis now shifts to whether the error was harmless. *See* TEX.R.APP.P. 81(b)(2). This court must reverse unless we find, beyond a reasonable doubt, the error did not increase appellant's punishment. In the instant case, as in *Ybarra*, the jury was instructed that the range of punishment for aggravated robbery was five to ninety-nine years, or life. During closing arguments, the State asked the jury to assess punishment of fifty years, while the appellant requested a ten-year sentence. Because the jury later returned a verdict of seventy years' confinement, we cannot find beyond a reasonable doubt that appellant's deferred adjudication did not add to his punishment. *See Ybarra*, 768 S.W.2d at 494. Accordingly, we sustain appellant's first point of error.

## JURY ARGUMENT

In his second point of error, appellant contends that the State committed reversible error during its closing argument on punishment by encouraging the jury to consider the existence of parole laws in assessing punishment.

In its charge to the jury, the trial court included the following instruction:

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-fourth of the sentence imposed or 15 years, whichever is less, without consideration of any good conduct time he may earn. If the defendant is sentenced to a term of less than six years, he must serve at least two years before he is eligible for parole.

In addition, pursuant to article 37.07, section (4)(a) of the Texas Code of Criminal Procedure, the trial court instructed the jury that they:

may consider the existence of the parole law and good conduct time. However, [the jury may] not ... consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. [And may] not ... consider the manner in which the parole law may be applied to this particular defendant.

In an effort to explain these parole instructions to the jury during closing argument, the prosecutor displayed a large poster that set out the parole eligibility requirements. Referring to the poster during her argument, the prosecutor made the following remarks, over objection:

Now, page five [of the trial court's charge]. Page five says that a defendant does not become eligible for parole until the actual time served; that means day for day served—

. . . .

[PROSECUTOR:]—equals one fourth of the sentence imposed or 15 years, whichever is less. Okay?

What does that mean?

That means, for example, that if a person is sentenced to 20 years—

. . . .

... then they become eligible to be considered for release on parole after one quarter, which is five. Okay?

If a person is sentenced to 40 years, for example, they become eligible for release from prison at ten years, which is one quarter of that.

If a person is sentenced to 60, all the way up to 99 years, anywhere in this range, they become eligible for consideration of parole after 15 years. That 15 years applies, whether the sentence is 60 or 99.

So It is important for you to understand that ... there is no practical difference in a 60–year sentence and a 99–year sentence. . . .

Appellant objected to the prosecutor's remarks on the basis that they invited the jury to consider the applicability of parole law specifically to appellant in direct violation of the trial court's charge and article 37.07, section (4)(a).

■ The purpose of closing argument is to facilitate the jury in properly analyzing the evidence presented at trial so that it may arrive at a just and reasonable conclusion based on the evidence alone. *Campbell v. State*, 610 S.W.2d 754, 756 (Tex.Crim.App. [Panel Op.] 1980). One often used method is the explaining or paraphrasing of law found in the trial court's charge to the jury. *Jones v. State*, 725 S.W.2d 770, 772 (Tex.App.—Dallas 1987, pet. ref'd). This practice is permissible unless the proffered explanation or paraphrase asserts legal propositions contrary to the trial court's charge. Logic would further dictate that such an explanation or paraphrase must fall within one of the four recognized areas of permissible jury argument: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Bell v. State*, 724 S.W.2d 780, 802–03 (Tex.Crim.App. 1986), *cert. denied*, 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987).

■ Prosecutors must exercise caution when arguing parole eligibility to a jury. Article 37.07, section (4)(a) explicitly prohibits a jury from considering parole eligibility with respect to the defendant on trial. Instead, a jury may only consider the concept of parole eligibility in general. Tex.Code Crim.Proc.Ann. art. 37.07 § (4)(a) (Vernon Supp.1995). Consequently, while attempting to explain the existence of parole law as set forth in the trial court's charge, a prosecutor must avoid applying the law to the defendant on trial.

■ In *Clay v. State*, 741 S.W.2d 209 (Tex. App.—Dallas 1987, pet. ref'd), for example, a jury argument was deemed improper when a prosecutor intermixed specifics about the defendant's potential for parole eligibility with a general discussion of parole law. Specifically, the prosecutor stated that, "[this defendant] [i]f he behaves well, ... may get out when he's supposed to. If he doesn't, they may keep him there a little longer." *Id.* at 210. The Dallas Court of Appeals reversed and remanded the case for a new trial on punishment, holding that such specific remarks were "tantamount to telling the jury to disregard the charge of the court on the applicable law and to apply the parole laws" to the defendant on trial. *Id.* at 211.

In contrast, a more generic argument was upheld in *Lunn v. State*, 753 S.W.2d 492 (Tex.App.—Beaumont 1988, no pet.). In that case, the prosecutor did not refer to the defendant specifically in explaining the parole instruction found in the trial court's charge. Instead, the prosecutor applied the parole law to defendants generally, as follows:

> So, *any defendant* under these same circumstances, if given the maximum of 20 years, *any defendant*, regardless of how incorrigible he was, he would still be eligible for parole after seven years. Actually after six and two-thirds years.

*Id.* at 493 (emphasis added). Because these remarks avoided a direct reference to the defendant on trial, the court of appeals in *Lunn* deemed them proper. *Id.; see also Taylor v. State*, 827 S.W.2d 538, 542 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd) (argument summarizing the constitutionally mandated charge on parole without specifically referring to the defendant on trial was proper both as summary of evidence and as reasonable deduction from evidence).

The prosecutor's argument in the instant case closely resembles the argument upheld in *Lunn.* Here, the challenged argument discussed the trial court's charge on parole law without suggesting that the jury apply it to appellant specifically. For that reason, we hold that the prosecutor's argument constitutes both a proper summation of the evidence and a reasonable deduction from the

evidence. Accordingly, point of error two is overruled.

## *BATSON* CHALLENGE

In his third point of error, appellant contends that the trial court erred in finding that the State furnished race-neutral reasons for their peremptory strike against an African–American venireperson, Leonard Mitchell.

Two of the forty-two members of the venire were African–American, the same race as appellant. One of the African–American panelists was seated on the jury; the other, venireperson Mitchell, was removed by the State's exercise of a peremptory strike. Thereafter, appellant alleged that the State struck venireperson Mitchell on the basis of his race. During the resulting *Batson*[1] hearing, the trial court asked the State to articulate its reasons for striking venireperson Mitchell, to which the State responded that they removed him for three reasons: (i) his failure to disclose a past criminal case on the jury questionnaire; (ii) his ponytail; and (iii) his eagerness to consider probation for the charged offense. At the conclusion of the hearing, the trial court found that the State had furnished race-neutral reasons for the exercise of the peremptory strike and denied appellant relief. Appellant submits that the trial court's finding was error.

■ In attempting to execute a *Batson* challenge, the movant has to make a prima facie showing that: 1) stricken jurors are members of a cognizable racial group; 2) that opposing counsel has exercised peremptory challenges to remove from the venire members of a minority group; and 3) these facts and any other relevant circumstances raise an inference that opposing counsel excluded the venirepersons from the venire because of their race. *Id.* at 96, 106 S.Ct. at 1722–23, 90 L.Ed.2d at 87–88; *Rousseau v. State*, 824 S.W.2d 579, 582 (Tex.Crim.App. 1992), *cert. denied*, —— U.S. ——, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993); *Texas Tech Univ. Health Sciences Ctr. v. Apodaca*, 876 S.W.2d 402, 406 (Tex.App.—El Paso 1994, writ denied).

---

1. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

■ Once the defendant has made the "requisite showing," the burden of production of the evidence shifts to the State to provide a neutral explanation for each of the strikes that relate to the particular case to be tried. *Miller v. State,* 733 S.W.2d 287, 290 (Tex. App.—Corpus Christi 1987), *rev'd,* 741 S.W.2d 501 (Tex.Crim.App.1987) (op. on reh'g).

■ If the State provides a race-neutral reason for the strike, the burden then shifts back to the defendant to show that the State's reason is merely pretextual and "a cover for a racially motivated challenge." *Camacho v. State,* 864 S.W.2d 524, 528 (Tex. Crim.App.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1339, 127 L.Ed.2d 687 (1994).

■ For reviewing a trial court's findings on *Batson* issues, the Texas Court of Criminal Appeals has adopted the "clearly erroneous" standard of appellate review. *Tennard v. State,* 802 S.W.2d 678, 680 (Tex. Crim.App.1990), *cert. denied,* 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1077 (1991); *Whitsey v. State,* 796 S.W.2d 707, 726 (Tex. Crim.App.1989) (op. on reh'g). Under this standard, the trial court's ruling must be affirmed unless a review of the entire record leaves the reviewing court with the "definite and firm conviction" that the trial court committed a mistake. *Hernandez v. New York,* 500 U.S. 352, 369, 111 S.Ct. 1859, 1869, 114 L.Ed.2d 395, 412 (1991); *Whitsey,* 796 S.W.2d at 721. Not surprisingly, the trial court's decision on the question of purposeful discrimination is to be accorded great deference on appeal. *Hernandez,* 500 U.S. at 364, 111 S.Ct. at 1868, 114 L.Ed.2d at 410. A reviewing court is not to determine whether the prosecutor's explanations are credible, but whether the trial court's ruling is supported by the record and, therefore, not clearly erroneous. *Hill v. State,* 827 S.W.2d 860, 865 (Tex.Crim.App.), *cert. denied,* 506 U.S. 905, 113 S.Ct. 297, 121 L.Ed.2d 221 (1992). Furthermore, where there exist two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. *Whitsey,* 796 S.W.2d at 722.

■ After reviewing the entire record, we hold that the trial court's finding that the State's explanations for challenging venireperson Mitchell were race-neutral is not clearly erroneous. As we stated above, the State's articulated reasons for striking venireperson Mitchell were three-fold. First, venireperson Mitchell failed to disclose "a criminal case that he had pending in the past" on his jury information sheet. Second, venireperson Mitchell wore his hair in a ponytail, a fact that the prosecutor argued did not "make" his jury.[2] Third, venireperson Mitchell was stricken due to his eager and immediate response of "[s]ure can" to the question, "[C]ould you give fair consideration to placing someone on probation if they had been convicted of aggravated robbery?" All of these reasons combined constituted a race-neutral justification for the State's use of a peremptory challenge against venireperson Mitchell. *See Gambel v. State,* 835 S.W.2d 788, 790–91 (Tex.App.—Houston [14th Dist.] 1992, no pet.) (fact that venireperson wore an earring was valid race-neutral reason for peremptory challenge in light of prosecutor's hunch and past experience); *Straughter v. State,* 801 S.W.2d 607, 614 (Tex.App.—Houston [1st Dist.] 1990, no pet.) (peremptory challenge may be validly based on manner in which venireperson reacts to questions as well as verbal statements in record); *Holman v. State,* 772 S.W.2d 530, 533 (Tex. App.—Beaumont 1989, no pet.) (concealing information is race-neutral reason for exercising peremptory strike).

In short, this record does not leave us with a "definite and firm conviction" that the trial court committed a mistake in finding that the State provided a race-neutral explanation for striking venireperson Mitchell. Accordingly, we uphold the trial court's ruling. Point of error three is overruled.

The judgment of the trial court on punishment is reversed. The judgment on the conviction is affirmed and this case is remanded for a new trial on the issue of punishment only.

---

2. The State also exercised a peremptory strike against another venireperson, a white male, for the same reason.

DAUPHINOT, Justice, concurring.

Appellate courts in Texas have long held that permissible jury argument must fall within one of four recognized areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement.[1]

Our courts have held that evidence regarding implementation of the parole law may not be offered before a jury.[2] In the case before us, the State complied with these limitations and offered no evidence regarding the practices of the Texas Department of Criminal Justice in granting parole. The argument complained of in Appellant's second point of error, then, cannot be considered a summation of the evidence, a reasonable deduction from the evidence, or, in this case, an answer to argument of opposing counsel.

Is it a plea for law enforcement? Certainly the parole instruction was crafted for the purpose of increasing jury sentences.[3] But if the jury is to arrive at a just and reasonable conclusion based on the evidence alone, it is difficult to understand how the parole instruction may be argued as a plea for law enforcement. While one method of facilitating the jury's proper analysis of the evidence presented at trial is to explain or paraphrase the law found in the trial court's charge, this method is really inappropriate since the jury is specifically instructed not to apply the parole instruction to the defendant on trial.[4]

If we are to be honest, we must admit that the trial and appellate courts have been caught between the rock that prohibits a jury's considering parole eligibility with respect to the defendant on trial and the hard place that requires the parole instruction be given to the jury. TEX.CODE CRIM.PROC.ANN. art. 37.07 § (4)(a) (Vernon Supp.1995). The jury is placed in an even less enviable position. They are expected to perform the impossible—to listen to the judge charge them on parole eligibility, to listen to the prosecutor argue parole eligibility, to have the writ-ten charge which instructs them on parole eligibility, to be told they may consider the parole law, but at the same time to be prohibited from applying that law to the defendant on trial.

When a prosecutor argues parole eligibility, it increases the probability jurors will consider parole in their deliberations. In the case before us, the prosecutor argued:

If a person is sentenced to 60, all the way up to 99 years, anywhere in this range, they become eligible for consideration of parole after 15 years. That 15 years applies, whether the sentence is 60 or 99.

So it is important for you to understand that ... there is no practical difference in a 60 year sentence and a 99 year sentence. [Emphasis added.]

Why is it important for the jury to understand there is no practical difference in a sixty-year sentence and a ninety-nine-year sentence unless they are being asked to apply the parole law to the case before them? In this case, Appellant was ultimately sentenced to seventy years' confinement in the Institutional Division of the Texas Department of Criminal Justice.

The majority finds that because the prosecutor used the magic words "a person" instead of "this person," the remark avoids a direct reference to Appellant. The majority then finds that, although there was no evidence of parole eligibility or the application of parole laws, the argument constitutes both a proper summation of the evidence and a reasonable deduction from the evidence.

We have created many fictions in criminal law. We have created the fiction that the trier of fact determines the actual length of incarceration. We have created the fiction that a jury may be instructed on the application of the parole law and consider the existence of the parole law, but will disregard its application to the person on trial. We have created the fiction that when a lawyer argues

1. *Bell v. State*, 724 S.W.2d 780, 802–03 (Tex. Crim.App.1986), *cert. denied*, 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987).

2. *Penry v. State*, 903 S.W.2d 715, 764 (Tex.Crim. App.), *cert. denied*, —— U.S. ——, 116 S.Ct. 480, 133 L.Ed.2d 408 (1995).

3. *Curry v. State*, 861 S.W.2d 479, 482 (Tex.App.— Fort Worth 1993, pet. ref'd).

4. *See Campbell v. State*, 610 S.W.2d 754, 756 (Tex.Crim.App. [Panel Op.] 1980); *Jones v. State*, 725 S.W.2d 770, 772 (Tex.App.—Dallas 1987, pet. ref'd).

the parole instruction, the lawyer is simply summarizing evidence or making a reasonable deduction from evidence which is found nowhere in the record. An equally great fiction is that a lawyer who argues the parole instruction is not inviting the jury to consider parole as it applies to the defendant on trial.

Since we do not have legislative authority, we are powerless to change the laws regarding parole and the parole instruction. We do, however, have the authority to question fictions which require suspension of intellectual integrity. We should ask the Court of Criminal Appeals to provide guidance to the lower courts and, balancing the competing interests of prosecution and defense, instruct us that it is improper for either side to argue the parole instruction because it encourages the jury to apply the parole law to the defendant at bar.

RICHARDS, J., joins

BRIGHAM, Justice, concurring.

The majority has reached a correct decision in its opinion, with which I wholeheartedly agree. I write separately only to offer an additional reason for this court to conclude that jury argument regarding the parole instruction is proper jury argument.

A brief history of the parole instruction outlined in article 37.07, section 4(a) of the Texas Code of Criminal Procedure is appropriate. In 1985, the Legislature added the instruction to article 37.07. TEX.CODE CRIM. PROC.ANN. art. 37.07 § 4(a)[1]. Two years later, the Court of Criminal Appeals determined that the parole instruction violated the separation of powers and due course of law provisions of the Texas Constitution. *Rose v. State*, 752 S.W.2d 529, 537 (Tex.Crim.App. 1987). In reaching its holding, the Court of Criminal Appeals acknowledged the risk that punishment could be unfairly based on extraneous considerations. *Id.* The *Rose* holding rendered the parole instruction of article 37.07 unconstitutional.

Two years later, Texas voters altered the fundamental law of this state so as to approve the parole instruction. On November 7, 1989, article IV, section 11(a) of the Texas Constitution was amended to expressly authorize such an instruction:

The Legislature shall by law establish a Board of Pardons and Paroles and shall require it to keep record of its actions and the reasons for its actions. The Legislature shall have authority to enact parole laws and laws *that require or permit courts to inform juries about the effect of good conduct time and eligibility for parole or mandatory supervision on the period of incarceration served by a defendant convicted of a criminal offense.*[2]

In its analysis of the history of article 37.07, section 4(a), the Court of Criminal Appeals noted that the purpose for the amendment was to "establish a constitutional basis for any legislative efforts to provide courts with a jury charge regarding good conduct time and parole." *Oakley v. State*, 830 S.W.2d 107, 109 (Tex.Crim.App.1992). In *Oakley*, the Court of Criminal Appeals recognized the importance of the issue to citizens of this state:

[W]hen Texas voters approved the amendment to Article IV, Section 11(a) of the Texas Constitution on November 7, 1989, that amendment became part of the fundamental law of Texas with the same effect as if it had been adopted as part of the Constitution originally adopted in 1876. Moreover, by so explicitly changing the fundamental law, the people clearly articulated their will or intent that the Legislature be authorized to draft laws permitting trial courts to inform juries about the operation and effect of parole laws.

*Id.* at 109–10.

Passage of the constitutional amendment and the subsequent re-enactment of article 37.07, section 4[3] has thus woven the parole

---

1.  *See* Act of May 24, 1985, 69th Leg., R.S., ch. 576, § 1, 1985 Tex.Gen.Laws 2195, 2196.

2.  TEX. CONST. art. IV, § 11(a) (emphasis added). The language of the then-proposed Constitutional Amendment was drafted by the Legislature. *See* Tex.S.J.Res. 4, 71st Leg., R.S., 1989 Tex.Gen. Laws 6414, and Act of May 3, 1989, 71st Leg.,

R.S., ch. 103, § 1, 1989 Tex.Gen.Law. 442, 442. *See also Oakley v. State*, 830 S.W.2d 107, 109–10 (Tex.Crim.App.1992).

3.  *See* Act of May 3, 1989, 71st Leg., R.S., ch. 103, § 1, 1989 Tex.Gen.Laws 442, 442–44, *amended by* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 5.02, 1993 Tex.Gen.Laws 3743, 3743–745.

instruction into the very fabric of our state law. As a result, jury argument which accurately paraphrases or summarizes the parole instruction, as was the case here, must be construed as proper summation regardless of whether it appears to fit neatly into any of the *Bell v. State,* 724 S.W.2d 780, 802–03 (Tex.Crim.App.1986), *cert. denied,* 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987), categories for proper jury argument.