Fernando Jaramillo Perez v. State
















IN THE
TENTH COURT OF APPEALS
 

No. 10-98-013-CR

     FERNANDO JARAMILLO PEREZ,
                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                              Appellee
 

From the 54th District Court
McLennan County, Texas
Trial Court # 95-177-C
                                                                                                                     

O P I N I O N
                                                                                                                     

      In November of 1995, Fernando Perez was convicted of murder. See Tex. Pen. Code Ann. §
19.02(b) (Vernon 1994). Perez appealed his conviction, complaining that the court erred in refusing
to charge the jury in its punishment charge on the issue of sudden passion. We remanded the cause
for a new punishment hearing. See Perez v. State, 940 S.W.2d 820 (Tex. App.—Waco 1997, no pet.).
 In November of 1997, a new punishment hearing was held with the jury assessing punishment at life
imprisonment plus a fine of $10,000. Perez appeals, asserting that the court erred in admitting
testimony to bolster a state’s witness’ testimony and in allowing the State to explain parole laws during
closing argument. Finding a single error but no harm, we will affirm the judgment.
THE EVIDENCE
      According to Perez, he had been “best friends” with Genaro Esquivel up until one month before
he killed Esquivel. At that time, he came to believe that Esquivel was having an affair with his wife,
Rosa Cervantes. Cervantes was living at a family abuse shelter at the time and had obtained a
protective order against Perez. On the day of the shooting, Perez was at a residence on North 12th
Street in Waco. Esquivel drove up to the residence and, according to Perez, challenged him to a fight. 
Perez testified that he was afraid because he believed that Esquivel regularly carried a handgun. Others
testified that Esquivel did not own or carry a gun. 
      Perez testified that they began to argue and, as they argued, Esquivel reached underneath the seat
of his truck. He said that he believed Esquivel was reaching for a gun, so he pulled out his revolver
and began shooting. Perez shot Esquivel at least five times. No weapon was found either in
Esquivel’s truck or on his person. Dr. Joe Gillardo, who performed an autopsy on Esquivel, testified
that some of the shots were fired less than three feet away from Esquivel. Eyewitnesses testified that
Perez shot Esquivel, walked to his car, then walked back to Esquivel’s truck and shot him three more
times. 
BOLSTERING
      Cervantes testified at the punishment hearing on remand. She testified to Perez’s violent character,
detailing incidents where he physically abused her and their daughter. She also testified that he shot
the family dog. On cross-examination, Perez’s attorney questioned why Cervantes had not testified
to these incidents at the first punishment hearing, thereby questioning her truthfulness. On redirect,
the State questioned Cervantes about divorce petitions and a protective order in which Cervantes had
previously made the same type of allegations against Perez. Perez argued that this type of questioning
constituted improper bolstering and that the prejudicial effect outweighed any probative value that the
testimony might have. The court overruled Perez’s objections. The divorce petitions and protective
order were later admitted into evidence. 
      On appeal, Perez urges that he did not impeach Cervantes’ testimony of violent acts committed
against her, but rather that he impeached her only on her failure to relate the dog-shooting incident at
the prior trial. Because the divorce pleadings and protective order did not mention that incident, he
urges, they could not properly be used as a prior consistent statement. Our review of the record reveals
that Cervantes was in fact impeached regarding her testimony of Perez’s violent nature generally.
      On cross-examination, Perez’s attorney questioned Cervantes:
Q: And in this [November 1993] incident, if I recall your testimony correctly, he hit you, hit your
daughter, and threatened to kill you if you left the house?

      A: Yes.
Q: All right. Ma’am, do you remember testifying about this matter, say two years ago, in
November, 1995?

      A: Yes.
Q: And at that time, you didn’t say anything about this November, 1993 incident, did you?

...
Q: All right. Now then, ma’am since all this has happened, you’ve gotten to be pretty friendly
with Ms. Grace Estrada, have you not?

      A: Not really friends, but we’ve talked about the case.
      Q: You came to court with her this morning?
      A: Yes.
      Q: Okay. You testified a few minutes ago that your husband shot the family dog.
      A: Yes.
Q: All right, ma’am. Now let’s go back to November, 1995, when you previously testified.

      A: All right.
Q: You were asked, were you not, if Fernando Perez had ever fired a gun at any living being?

      A: I don’t remember that, but – but what I’m saying now is, it is true, he killed that dog.
...
      Q: ...you answered no, is that correct?
      A: It could be. I don’t remember, that’s been a long time.
This line of questioning challenged Cervantes’ truthfulness and impeached her credibility regarding
Perez’s violent nature generally. Furthermore, Perez called witnesses who testified that Cervantes was
being untruthful about some of the incidents. Specifically, two daughters testified that they never saw
any signs that their father abused their mother. 
      Former Rule of Criminal Evidence 612(c) prohibits the admission of prior statements of a witness
which are consistent with that witness’ testimony except as provided in Rule 801(e)(1)(B).


 Former
Rule of Criminal Evidence 801(e)(1)(B) provides that a witness’ prior statement may be admissible if
it is “consistent with his testimony and is offered to rebut an express or implied charge against him of
recent fabrication or improper influence or motive....” Tex. R. Crim. Evid. 801(e)(1)(B); see also
Moody v. State, 827 S.W.2d 875, 893-94 (Tex. Crim. App. 1992); Haughton v. State, 805 S.W.2d
405, 408 (Tex. Crim. App. 1990). To be admissible, the prior statement must relate to the same
matter or incident testified to by the declarant at trial and must have been made before the alleged
improper motive arose. Kipp v. State, 876 S.W.2d 330, 338 (Tex. Crim. App. 1994). Both criteria
are met here. The record shows that Perez challenged Cervantes’ truthfulness regarding past family
violence and implied a motive for lying by questioning her about the development of a recent friendship
with the victim’s widow. We cannot say that the court abused its discretion in admitting the prior
statements. Issue one is overruled.
 IMPROPER JURY ARGUMENT
      During the State’s closing argument, the following comments were made:
The Judge has given you an instruction that talks about parole law, and I want to explain that
to you. I think it’s on page eight of your Charge. And you see something in there that says, “If
an individual receives a life sentence, that if he committed this crime with a firearm, a deadly
weapon,” which is the case here, that “he will not be considered for parole for--”
 
It’s in your charge, 30 years. What it’s basically saying is, life, we say equals 60, half of that’s
30. So, anything you give him over 60, he’s eligible for parole after serving 30 years. I just want
you to understand that, because I do want you to set the proper sentence. I want you to know all
the information that I can provide to you.

      During deliberations, the jury asked two questions about parole. The first requested a definition
of “life,” and the second asked whether “life” meant 60 years or 99 years. The jury indicated that they
were confused by the prosecutor’s argument. The court responded that the jurors had all the law they
needed in the charge.
      Broadly speaking, there are four general areas of permissible jury argument: (1) summation of
the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing
counsel; or (4) plea for law enforcement. Dinkins v. State, 894 S.W.2d 330, 357 (Tex. Crim. App.
1995); Cooks v. State, 844 S.W.2d 697, 727 (Tex. Crim. App. 1992). Following an objectionable
argument, an instruction by the court to disregard the comment will normally obviate the error, unless
the remark is so inflammatory that its prejudicial effect cannot reasonably be removed by such an
admonishment. Id. Moreover, in order for an improper argument to rise to a level mandating
reversal, the argument must be "extreme or manifestly improper, violative of a mandatory statute, or
inject new facts harmful to the accused." Id. 
      It is acceptable to quote or paraphrase the court’s charge to the jury. Whiting v. State, 797 S.W.2d
45, 48 (Tex. Crim. App. 1990); Jones v. State, 641 S.W.2d 545, 550 (Tex. Crim. App. 1982); Clay
v. State, 741 S.W.2d 209, 210 (Tex. App.—Dallas 1987, pet. ref’d). This includes explaining or
paraphrasing the parole law found in the charge. Jones, 641 S.W.2d at 550.
      Nevertheless, a thin line separates “paraphrasing” and “applying” parole law to a particular
defendant. Article 37.07(4)(a) of the Code of Criminal Procedure expressly prohibits a jury from
considering parole eligibility for the defendant on trial. Specifically, the jury is charged: “You may
consider the existence of the parole law and good conduct time. However, you are not to consider the
extent to which good conduct time may be awarded to or forfeited by this particular defendant. You
are not to consider the manner in which the parole law may be applied to this particular defendant.” 
Tex. Code Crim. Proc. Ann. art. 37.07(4)(a) (Vernon Supp. 1999). Consequently, it is improper
for a prosecutor to apply the law to the defendant on trial during jury argument. Taylor v. State, 911
S.W.2d 906, 911 (Tex. App.—Fort Worth 1995, pet. ref’d); Clay, 741 S.W.2d at 210-11.
      A similar argument was made in Taylor v. State, with the prosecutor explaining that there is no
practical difference between a 99-year sentence and a 60-year sentence. The Fort Worth Court found
no error in this argument, emphasizing that the prosecutor avoided any reference to the defendant in
his comments. Taylor, 911 S.W.2d at 912.


 In this case, the prosecutor explained the parole laws and
then explained to the jury how that application would be applied to this particular defendant. He said,
“anything you give him over 60 years, he’s eligible for parole after 30 years.” He further encouraged
the jury to “set the proper sentence” based on this information. This argument encouraged the jury
to consider the effects of parole on Perez’s punishment and therefore was improper. 
      Improper jury argument is error of a non-constitutional dimension. Tex. R. App. P. 44.2(b);
Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (on reh’g); Coggeshall v. State, 961
S.W.2d 639, 643 (Tex. App.—Fort Worth 1998, pet. ref’d). In establishing the effect of the improper
argument, three factors are considered: 1) the severity or magnitude of the remarks, 2) the measures
taken to cure the misconduct, and 3) the certainty of conviction absent the misconduct. Mosley, 983
S.W.2d at 260 (discussing striking at the defendant over the shoulders of defense counsel).
      Considering the severity of the remarks, the record indicates that the comments were an attempt
to explain the parole law as outlined in the charge and were not an underhanded attempt to invite the
jury to consider Perez’s eligibility for parole in sentencing him. Furthermore, the jury’s note
regarding the definition of “life” shows that they were not persuaded to sentence Perez based on any
comments on parole, but rather were confused by those comments. 
      As to the certainty of conviction, this error occurred at the punishment stage. Nevertheless, we
can consider the likelihood that Perez would have received a lesser sentence if the improper comments
had not been made. The evidence revealed that Perez shot the victim at least five times. Eyewitnesses
testified that Perez acted in a manner which indicated that he wanted to be sure that the victim was
dead. There was evidence that Perez was a violent man–abusive to both his wife and his daughter. 
Considering this evidence, it is unlikely that the jury would have sentenced Perez to less time had the
prosecutor’s comments not been made.
      Finally, we consider the measures taken to cure the misconduct. The court failed to sustain
Perez’s objection or to instruct the jury to disregard. However, after the jurors indicated their
confusion, the court instructed them to follow the charge and not the prosecutor. This helped to
minimize the effect of the improper argument. 
      Considering the factors set out in Mosley, we find that the improper jury argument did not have
a substantial effect on the jury’s verdict. Fowler v. State, 958 S.W.2d 853, 866 (Tex. App.—Waco
1997), aff’d, No. 0075-98 (Tex. Crim. App. March 31, 1999). Issue two is overruled.
      The judgment is affirmed.
 
                                                                       BILL VANCE
                                                                       Justice

Before Chief Justice Davis,
          Justice Vance, and
          Justice Gray
Affirmed
Opinion delivered and filed May 12, 1999
Publish