**Fernando Jaramillo PEREZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–98–013–CR.**

Court of Appeals of Texas,
Waco.

May 12, 1999.

John D. Nation, Dallas, for appellant.

John W. Segrest, Criminal Dist. Atty., Mike Freeman, Matthew E. Johnson, Laura M. Alaniz, Asst. Dist. Attys., Waco, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

BILL VANCE, Justice.

In November of 1995, Fernando Perez was convicted of murder. *See* TEX. PEN. CODE ANN. § 19.02(b) (Vernon 1994). Perez appealed his conviction, complaining that the court erred in refusing to charge the jury in its punishment charge on the issue of sudden passion. We remanded the cause for a new punishment hearing. *See Perez v. State*, 940 S.W.2d 820 (Tex. App.—Waco 1997, no pet.). In November of 1997, a new punishment hearing was held with the jury assessing punishment at life imprisonment plus a fine of $10,000. Perez appeals, asserting that the court erred in admitting testimony to bolster a state's witness' testimony and in allowing the State to explain parole laws during closing argument. Finding a single error but no harm, we will affirm the judgment.

### THE EVIDENCE

According to Perez, he had been "best friends" with Genaro Esquivel up until one month before he killed Esquivel. At that time, he came to believe that Esquivel was

having an affair with his wife, Rosa Cervantes. Cervantes was living at a family abuse shelter at the time and had obtained a protective order against Perez. On the day of the shooting, Perez was at a residence on North 12th Street in Waco. Esquivel drove up to the residence and, according to Perez, challenged him to a fight. Perez testified that he was afraid because he believed that Esquivel regularly carried a handgun. Others testified that Esquivel did not own or carry a gun.

Perez testified that they began to argue and, as they argued, Esquivel reached underneath the seat of his truck. He said that he believed Esquivel was reaching for a gun, so he pulled out his revolver and began shooting. Perez shot Esquivel at least five times. No weapon was found either in Esquivel's truck or on his person. Dr. Joe Gillardo, who performed an autopsy on Esquivel, testified that some of the shots were fired less than three feet away from Esquivel. Eyewitnesses testified that Perez shot Esquivel, walked to his car, then walked back to Esquivel's truck and shot him three more times.

## BOLSTERING

Cervantes testified at the punishment hearing on remand. She testified to Perez's violent character, detailing incidents where he physically abused her and their daughter. She also testified that he shot the family dog. On cross-examination, Perez's attorney questioned why Cervantes had not testified to these incidents at the first punishment hearing, thereby questioning her truthfulness. On redirect, the State questioned Cervantes about divorce petitions and a protective order in which Cervantes had previously made the same type of allegations against Perez. Perez argued that this type of questioning constituted improper bolstering and that the prejudicial effect outweighed any probative value that the testimony might have. The court overruled Perez's objections. The divorce petitions and protective order were later admitted into evidence.

On appeal, Perez urges that he did not impeach Cervantes' testimony of violent acts committed against her, but rather that he impeached her only on her failure to relate the dog-shooting incident at the prior trial. Because the divorce pleadings and protective order did not mention that incident, he urges, they could not properly be used as a prior consistent statement. Our review of the record reveals that Cervantes was in fact impeached regarding her testimony of Perez's violent nature generally.

On cross-examination, Perez's attorney questioned Cervantes:

Q: And in this [November 1993] incident, if I recall your testimony correctly, he hit you, hit your daughter, and threatened to kill you if you left the house?

A: Yes.

Q: All right. Ma'am, do you remember testifying about this matter, say two years ago, in November, 1995?

A: Yes.

Q: And at that time, you didn't say anything about this November, 1993 incident, did you?

. . .

Q: All right. Now then, ma'am since all this has happened, you've gotten to be pretty friendly with Ms. Grace Estrada, have you not?

A: Not really friends, but we've talked about the case.

Q: You came to court with her this morning?

A: Yes.

Q: Okay. You testified a few minutes ago that your husband shot the family dog.

A: Yes.

Q: All right, ma'am. Now let's go back to November, 1995, when you previously testified.

A: All right.

Q: You were asked, were you not, if Fernando Perez had ever fired a gun at any living being?

A: I don't remember that, but—but what I'm saying now is, it is true, he killed that dog.

. . .

Q: . . . you answered no, is that correct?

A: It could be. I don't remember, that's been a long time.

This line of questioning challenged Cervantes' truthfulness and impeached her credibility regarding Perez's violent nature generally. Furthermore, Perez called witnesses who testified that Cervantes was being untruthful about some of the incidents. Specifically, two daughters testified that they never saw any signs that their father abused their mother.

■ Former Rule of Criminal Evidence 612(c) prohibits the admission of prior statements of a witness which are consistent with that witness' testimony except as provided in Rule 801(e)(1)(B).[1] Former Rule of Criminal Evidence 801(e)(1)(B) provides that a witness' prior statement may be admissible if it is "consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive...." Tex.R.Crim. Evid. 801(e)(1)(B); *see also Moody v. State,* 827 S.W.2d 875, 893–94 (Tex.Crim.App.1992); *Haughton v. State,* 805 S.W.2d 405, 408 (Tex.Crim.App.1990). To be admissible, the prior statement must relate to the same matter or incident testified to by the declarant at trial and must have been made before the alleged improper motive arose. *Kipp v. State,* 876 S.W.2d 330, 338 (Tex.Crim.App.1994). Both criteria are met here. The record shows that Perez challenged Cervantes' truthfulness regarding past family violence and implied a motive for lying by questioning her about the development of a recent friendship with

the victim's widow. We cannot say that the court abused its discretion in admitting the prior statements. Issue one is overruled.

## IMPROPER JURY ARGUMENT

During the State's closing argument, the following comments were made:

> The Judge has given you an instruction that talks about parole law, and I want to explain that to you. I think it's on page eight of your Charge. And you see something in there that says, "If an individual receives a life sentence, that if he committed this crime with a firearm, a deadly weapon," which is the case here, that "he will not be considered for parole for—"

It's in your charge, 30 years. What it's basically saying is, life, we say equals 60, half of that's 30. So, anything you give him over 60, he's eligible for parole after serving 30 years. I just want you to understand that, because I do want you to set the proper sentence. I want you to know all the information that I can provide to you.

During deliberations, the jury asked two questions about parole. The first requested a definition of "life," and the second asked whether "life" meant 60 years or 99 years. The jury indicated that they were confused by the prosecutor's argument. The court responded that the jurors had all the law they needed in the charge.

■ Broadly speaking, there are four general areas of permissible jury argument: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. *Dinkins v. State,* 894 S.W.2d 330, 357 (Tex. Crim.App.1995); *Cooks v. State,* 844 S.W.2d 697, 727 (Tex.Crim.App.1992). Following an objectionable argument, an instruction by the court to disregard the comment will normally obviate the error,

---

1. The former rules were still in effect at the time of Perez's second punishment hearing.

unless the remark is so inflammatory that its prejudicial effect cannot reasonably be removed by such an admonishment. *Id.* Moreover, in order for an improper argument to rise to a level mandating reversal, the argument must be "extreme or manifestly improper, violative of a mandatory statute, or inject new facts harmful to the accused." *Id.*

█ It is acceptable to quote or paraphrase the court's charge to the jury. *Whiting v. State,* 797 S.W.2d 45, 48 (Tex. Crim.App.1990); *Jones v. State,* 641 S.W.2d 545, 550 (Tex.Crim.App.1982); *Clay v. State,* 741 S.W.2d 209, 210 (Tex. App.—Dallas 1987, pet. ref'd). This includes explaining or paraphrasing the parole law found in the charge. *Jones,* 641 S.W.2d at 550.

Nevertheless, a thin line separates "paraphrasing" and "applying" parole law to a particular defendant. Article 37.07 § 4(a) of the Code of Criminal Procedure expressly prohibits a jury from considering parole eligibility for the defendant on trial. Specifically, the jury is charged: "You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant." TEX.CODE CRIM. PROC. ANN. art. 37.07 § 4(a) (Vernon Supp.1999). Consequently, it is improper for a prosecutor to apply the law to the defendant on trial during jury argument. *Taylor v. State,* 911 S.W.2d 906, 911 (Tex.App.— Fort Worth 1995, pet. ref'd); *Clay,* 741 S.W.2d at 210–11.

█ A similar argument was made in *Taylor v. State,* with the prosecutor explaining that there is no practical difference between a 99–year sentence and a 60–year sentence. The Fort Worth Court found no error in this argument, emphasizing that the prosecutor avoided any reference to the defendant in his comments. *Taylor,* 911 S.W.2d at 912.[2] In this case, the prosecutor explained the parole laws and then explained to the jury how that application would be applied to this particular defendant. He said, "anything you give *him* over 60 years, *he's* eligible for parole after 30 years." He further encouraged the jury to "set the proper sentence" based on this information. This argument encouraged the jury to consider the effects of parole on Perez's punishment and therefore was improper.

█ Improper jury argument is error of a non-constitutional dimension. TEX. R.APP. P. 44.2(b); *Mosley v. State,* 983 S.W.2d 249, 259 (Tex.Crim.App.1998) (on reh'g); *Coggeshall v. State,* 961 S.W.2d 639, 643 (Tex.App.—Fort Worth 1998, pet. ref'd). In establishing the effect of the improper argument, three factors are considered: 1) the severity or magnitude of the remarks, 2) the measures taken to cure the misconduct, and 3) the certainty of conviction absent the misconduct. *Mosley,* 983 S.W.2d at 260 (discussing striking at the defendant over the shoulders of defense counsel).

█ Considering the severity of the remarks, the record indicates that the comments were an attempt to explain the parole law as outlined in the charge and were not an underhanded attempt to invite the jury to consider Perez's eligibility for parole in sentencing him. Furthermore, the jury's note regarding the definition of "life" shows that they were not persuaded to sentence Perez based on any comments on parole, but rather were confused by those comments.

As to the certainty of conviction, this error occurred at the punishment stage. Nevertheless, we can consider the likelihood that Perez would have received a lesser sentence if the improper comments had not been made. The evidence revealed that Perez shot the victim at least five times. Eyewitnesses testified that Perez acted in a manner which indicated that he wanted to be sure that the victim was dead. There was evidence that Perez was a violent man-abusive to both his wife and his daughter. Considering this evidence, it is unlikely that the jury would have sentenced Perez to less time had the prosecutor's comments not been made.

Finally, we consider the measures taken to cure the misconduct. The court failed to sustain Perez's objection or to instruct the jury to disregard. However, after the jurors indicated their confusion, the court instructed them to follow the charge and not the prosecutor. This helped to minimize the effect of the improper argument.

Considering the factors set out in *Mosley*, we find that the improper jury argument did not have a substantial effect on the jury's verdict. *Fowler v. State*, 958 S.W.2d 853, 866 (Tex.App.—Waco 1997), *aff'd*, 991 S.W.2d 258 (Tex.Crim.App.1999). Issue two is overruled.

The judgment is affirmed.