Criminal Case Template






COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



CHRISTOPHER RAMON JESSIE,

                            Appellant,

v.

THE STATE OF TEXAS,

                            Appellee.

§

§

§

§

§

No. 08-04-00162-CR

Appeal from the

416th District Court

of Collin County, Texas

(TC# 219-80298-03)




O P I N I O N

           This is an appeal from a jury conviction for the offense of attempted burglary of a
habitation--enhanced as a habitual felony offender by allegations of two prior felony
convictions. The jury assessed punishment at life in the Institutional Division of the Texas
Department of Criminal Justice. We affirm the judgment of the trial court.
I. SUMMARY OF THE EVIDENCE
           During the guilt-innocence stage of trial, the complainant, Melinda Graham, testified
that on November 22, 2002, she was at home in Plano, Texas. She was sitting at her
computer checking her e-mail when she saw an individual creeping across her backyard. 
This person moved toward her sliding glass door near to where she was seated. She rose and
went to the sliding glass door and noticed the man crouched down just outside doing
something to the door. She looked down at the man and when they made eye contact, he ran
off. The police were called and found Appellant in the backyard of a neighbor’s house. 
Graham identified Appellant as the individual she saw at her door.
           At the punishment stage of trial, the State introduced, as part of its punishment
evidence, penitentiary packets indicating that Appellant had been convicted on five prior
occasions of felonies involving mainly burglaries of habitations.
           At the close of evidence, the charge was prepared and submitted to the jury. It
included an instruction tracking Tex. Code Crim. Proc. Ann. art. 37.07, § 4(b) (Vernon
Supp. 2004-05). The instruction read in relevant part:
Under the law applicable in this case, the defendant, if sentenced to a
term of imprisonment, may earn time off the period of incarceration imposed
through the award of good conduct time. Prison authorities may award good
conduct time to a prisoner who exhibits good behavior, diligence in carrying
out prison work assignments, and attempts at rehabilitation. If a prisoner
engages in misconduct, prison authorities may also take away all or part of any
good conduct time earned by the prisoner.
It is also possible that the length of time for which the defendant will
be imprisoned might be reduced by the award of parole.
Under the law applicable in this case, if defendant [sic] is sentenced to
a term of imprisonment, he will not become eligible for parole until the actual
time served equals one-fourth of the sentence imposed or fifteen (15) years,
whichever is less, without consideration of any good conduct time he may
earn. If the defendant is sentenced to a term of less than four (4) years, he
must serve at least two (2) years before he is eligible for parole. Eligibility for
parole does not guarantee that parole will be granted.
It cannot accurately be predicted how the parole law and good conduct
time might be applied to this defendant if he is sentenced to a term of
imprisonment, because the application of these laws will depend on decisions
made by prison and parole authorities.
You may consider the existence of the parole law and good conduct
time. However, you are not to consider the extent to which good conduct time
may be awarded to or forfeited by this particular defendant. You are not to
consider the manner in which the parole law may be applied to this particular
defendant.
The possible actions of the governor of the State of Texas or the Texas
board of Pardons and Paroles are not a matter of concern for the judge or jury.

           During closing argument, one of the prosecutors stated:
And at some point, and like I said, up until now he’s never had a jury
assess punishment. He’s pled guilty, and he’s been sentenced. But we have
got a little wiser and a little smarter. We realized, you know, we’re not doing
anyone any favors by putting him back on the street. Because as you heard the
Judge say, fifteen years or one-quarter of the time that you assess, whichever
is less, and you figure out the times that Chris is going to go over with you,
you’ll see it’s not long, it’s not life.

           Appellant’s counsel did not lodge an objection to the prosecutor’s last comments
about the fifteen years or the one-quarter time and the comment, “it’s not life.” During the
subsequent defensive argument, the following exchange occurred:
DEFENSE:And in assessing his punishment in this case I would ask all of
you, each and everyone of you to search your hearts and think
about what I have said here to you. Can you put him away, you
have that power, for the duration of the remaining years of his
life? And unless he’s Methuselah or some of those people, I
doubt if you gave him ninety-nine years he would be around for
ninety-nine years from now.
 
STATE:Your Honor, I object, considering the parole division of fifteen
years or a quarter, to say whichever is less, to say the rest of his
life from thirty-seven. I don’t think that’s a fair statement.
 
COURT:The jury will abide by the instructions in the Charge. Go ahead.
 
DEFENSE:So I would ask you to be fair and reasonable in your assessing
of the punishment in this case under the guidelines or under the
lawsuit, of course, if you gave him sixty years, he may be
eligible or become eligible after fifteen years, after having
served twenty-five percent of that time. But knowing the Texas
Department of Corrections as I do, he’s not going to get out in
fifteen years. The State knows that also. He’ll be lucky if he
got out in twenty.
 
STATE:In all due respect, we don’t know if he would serve fifteen. 
He’s asking for our agreement. Considering what he’s already
been sentenced to.
 
DEFENSE:We look at thirty-seven and add twenty to that, even at that age
he would be fifty-seven, fifty-eight, an old man like me. I’m not
going to say any of you are that age, but I know I am. He
doesn’t have very much to look forward to. Even if he was the
best of people and completely rehabilitated himself by going to
school while he’s in the institution, learning a trade, and just
making a 180 degree turn in his life. All I ask you is to be
reasonable in your assessment of the punishment in this case.
 
II. DISCUSSION
           In Appellant’s sole issue on appeal, he asserts that his trial counsel did not provide
effective assistance of counsel. Specifically, he contends that trial counsel was ineffective
for failing to object to the prosecutor’s reference to the parole law during argument at the
punishment stage. Successful claims of ineffective assistance of counsel must first
demonstrate that counsel was not functioning as counsel guaranteed by the Sixth Amendment
in providing reasonably effective assistance. Strickland v. Washington, 466 U.S. 668, 687,
104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The second prong of this test requires a
showing that counsel’s errors were so serious as to deprive Appellant of a fair trial, such that
there arises a reasonable probability that but for counsel’s unprofessional errors, the results
would have been different. Reasonable probability is a likelihood sufficient to undermine
confidence in the outcome. Id. at 694, 104 S.Ct. at 2068. Texas adopted this test in
Wilkerson v. State, 726 S.W.2d 542, 548 (Tex. Crim. App. 1986). See also McFarland v.
State, 845 S.W.2d 824, 842 (Tex. Crim. App. 1992), cert. denied, 508 U.S. 963, 113 S.Ct.
2937, 124 L.Ed.2d 686 (1993). The constitutional right to counsel does not mean errorless
representation. In order to meet the constitutional standard, counsel must provide reasonably
effective assistance. Wilkerson, 726 S.W.2d at 548. In reviewing these assertions, the
totality of representation is examined as opposed to focusing upon isolated acts or omissions. 
Ineffective assistance of counsel cannot be established by isolating or separating out one
portion of the trial counsel’s performance for examination. Bridge v. State, 726 S.W.2d 558,
571 (Tex. Crim. App. 1986). In that regard, this Court, on review, will not engage in
hindsighted comparisons of how other counsel, in particular, appellate counsel, might have
tried the case. See Wilkerson, 726 S.W.2d at 548. A fair assessment of trial counsel’s
performance requires that every effort be made to eliminate the distorting effects of
hindsight, to reconstruct the circumstances at trial, and to evaluate the conduct from
counsel’s perspective at the time. Stafford v. State, 813 S.W.2d 503, 506 (Tex. Crim. App.
1991). We must indulge a strong presumption that counsel’s conduct falls within the wide
range of reasonably professional assistance. The Appellant must overcome the presumption
that under the circumstances at trial, the challenged action could be considered sound trial
strategy. Strickland, 466 U.S. at 688-89, 104 S.Ct. at 2065; Stafford, 813 S.W.2d at 506. 
Consequently, allegations of ineffectiveness of counsel must be firmly founded by the record. 
Hawkins v. State, 660 S.W.2d 65, 75 (Tex. Crim. App. 1983); Mercado v. State, 615 S.W.2d
225, 228 (Tex. Crim. App. 1981). The burden is upon Appellant to establish ineffective
assistance of counsel by a preponderance of the evidence. Williams v. State, 837 S.W.2d
759, 761 (Tex. App.--El Paso 1992, no pet.).
           Initially, we note that Appellant did not file a motion for new trial and no hearing was
held regarding Appellant’s ineffectiveness claim. In most instances, the record on direct
appeal is undeveloped and cannot adequately reflect the failings of trial counsel. Thompson
v. State, 9 S.W.3d 808, 813-14 (Tex. Crim. App. 1999). A defendant may rebut the
presumption of effectiveness by providing a record from which the appellate court may
ascertain that trial counsel’s performance was not based on sound trial strategy. Parmer v.
State, 38 S.W.3d 661, 666 (Tex. App.--Austin 2000, pet. ref’d). A defendant may provide
that record by filing a motion for new trial and obtaining a hearing thereon based on
ineffective assistance of counsel. Id. Any error in trial strategy will be deemed inadequate
representation only if counsel’s actions are without any plausible basis. Id. A record that
does not include any discernible explanation of the motivation behind trial counsel’s actions
fails to establish whether his or her actions were of strategic design or were the result of
negligent conduct. Thompson, 9 S.W.3d at 813-14.
           As a general rule, prosecutors are permitted to quote, paraphrase, or explain the law
contained in the court’s charge unless the prosecutor’s statements are inaccurate or contrary
to the charge. See Whiting v. State, 797 S.W.2d 45, 48 (Tex. Crim. App. 1990); Jaramillo
Perez v. State, 994 S.W.2d 233, 237 (Tex. App.--Waco 1999, no pet.). This general rule
extends to the parole instruction. Jaramillo Perez, 994 S.W.2d at 237; Taylor v. State, 911
S.W.2d 906, 911 (Tex. App.--Fort Worth 1995, pet. ref’d). Prosecutors are not, however,
permitted to apply the parole laws to the defendant on trial. See Jaramillo Perez, 994 S.W.2d
at 237; Taylor, 911 S.W.2d at 911.
           In the present case, Appellant has failed to present any evidence regarding counsel’s
reasons for not objecting to the argument. This is not a case where there can be no valid
reason or legal strategy for failing to object. Appellant’s trial counsel seized upon the
prosecutor’s statements about parole and argued a favorable application of those statements
to the jury. Having subtly applied the parole law to Appellant, defense counsel asked the jury
to assess a reasonable punishment. Under this record, Appellant has not rebutted the
presumption that trial counsel’s failure to object was reasonable trial strategy. We overrule
Appellant’s sole issue on review.
           Having overruled Appellant’s sole issue on review, we affirm the judgment of the trial
court.
                                                                  RICHARD BARAJAS, Chief Justice

September 29, 2005

Before Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)