Affirmed and Majority and Concurring Opinions filed January 26, 2006









Affirmed
and Majority and Concurring Opinions filed January 26, 2006.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00883-CR

____________

 

JAMES LEE
BYRD,
Appellant

 

V.

 

THE STATE
OF TEXAS, Appellee

_______________________________________________

 

On Appeal from the 337th District Court

Harris County, Texas

Trial Court Cause No. 995,232

_______________________________________________

 

C O N C U
R R I N G   O P I N I O N

In his second issue, appellant asserts that the
trial court=s jury charge regarding parole
violated his due process rights under the Fourteenth Amendment to the United
States Constitution.  Appellant argues
that the wording of the charge is ambiguous and caused the jury to improperly
consider parole eligibility in assessing his sentence.  I write separately to address both the proper
analysis of this issue and appellant=s
argument that it is improper and unconstitutional for the jury to consider
parole eligibility in determining punishment. Some background is helpful to
understand the context of these issues. 








Historically, Texas law prohibited a jury from considering
parole law in any way whatsoever in assessing punishment.  See, e.g., Clark v. State, 643
S.W.2d 723, 724B25 (Tex. Crim. App. [Panel Op.] 1982) (stating that a jury=s consideration of parole in
assessing punishment is an Aevil to be avoided@ and that Aa jury in a felony case is not
authorized to consider or apply parole law in assessing punishment@); Sanders v. State, 580
S.W.2d 349, 351B52 (Tex. Crim. App. [Panel Op.] 1978) (stating that it is
improper for a jury to discuss or consider parole and that it is an
unconstitutional violation of separation of powers for a jury to increase
punishment based on consideration of parole laws).  Nonetheless, in 1985, the Texas Legislature
added section 4 to article 37.07, which
required trial courts to instruct juries in non-capital felony trials about
parole law generally.  See Acts 1985, 69th Leg., ch. 576, '' 1, p. 2195.



Two years later, the Texas Court of
Criminal Appeals declared that statute unconstitutional, finding
it violated the separation of powers and due course of law doctrines. See
Rose v. State, 752 S.W.2d 529, 535 (Tex. Crim. App. 1987) (declaring ' 4(a) of article 37.07
unconstitutional, on the basis that it violated separation of powers and due
course of law clauses).  In 1989, in reaction to
the Rose decision, Texas citizens voted to amend Article
IV, Section 11(a) of the Texas Constitution, as reflected in the following
italicized language:






The Legislature
shall by the law establish a Board of Pardons and Paroles and shall
require it to keep record of its actions and the reasons for its actions. The
Legislature shall have authority to enact parole laws and
laws that require or permit courts to inform juries about the effect of good
conduct time and eligibility for parole or mandatory supervision on the period
of incarceration served by a defendant convicted of a criminal offense.





 

See Tex. S.J. Res. 4, 71st Leg., R.S., 1989 Tex. Gen. Laws 6414; Act of May
3, 1989, 71st Leg., R.S., ch. 103, ' 1, 1989 Tex. Gen. Laws 442B43 (emphasis added to show additions
made by 1989 amendment).












This amendment explicitly authorized
the Texas Legislature to enact a statute to fulfill the citizens= mandate.  See Oakley v. State,
830 S.W.2d 107, 109 (Tex. Crim. App. 1992) (stating that A[t]his amendment clearly authorized
the Legislature to enact laws that permit or require courts to inform juries about the effect and operation of parole laws. In fact, in
1989 the Bill Analysis for Senate Joint Resolution No. 4, the precursor to the
amendment in Article IV, Section 11(a), stated that the purpose for the
amendment was to >establish a constitutional basis for any legislative efforts
to provide courts with a jury charge regarding good conduct time and parole.= Thus, when the Legislature
re-enacted Article 37.07, Section 4, in 1989, it did so pursuant to express constitutional
authority@). 
Under the authority of this part of the Texas Constitution, the
Legislature re-enacted article 37.07, section 4(a) in 1989. The Court of Criminal Appeals
determined that the re-enacted statute did not violate a
defendant=s rights under either the due-course-of-law or the
separation-of-powers provisions of the Texas Constitution. 
See Oakley v. State, 830 S.W.2d 107, 108B12 (Tex. Crim. App. 1992).  By explicitly changing the Texas Constitution
in this way, the people of Texas articulated a will and intent that the Texas
Legislature be authorized to enact statutes allowing trial courts to inform
juries about the operation and effect of parole laws.  See id. at 110.  The Court of Criminal Appeals also determined
that article 37.07, section 4(a)=s parole instruction does not violate
the federal constitution=s due process clause. See Muhammad v. State,
830 S.W.2d 953, 956 (Tex. Crim. App. 1992) (stating that
parole instruction gives jury accurate information on the law applicable to the
case and correctly instructs the jury not to speculate on
what parole authorities will do and holding that the parole instruction
mandated in article 37.07, section 4(a) does not violate federal due
process).  












Article 37.07, section 4(a) does not
apply to capital murder cases, and until 1999, the prohibition on considering
parole continued in those cases.  See
Colburn v. State, 966 S.W.2d 511, 516 (Tex. Crim. App. 1998) (stating that
Court of Criminal Appeals has repeatedly held that parole eligibility is not a
proper consideration at sentencing in a capital case and that the trial court
in a capital case may properly instruct the jury not to consider parole laws in
sentencing).  In 1999, however, the Texas
Legislature again exercised its authority under the 1989 constitutional
amendment and enacted a statute requiring that trial courts in capital murder
cases instruct the jury that, if sentenced to life imprisonment, a capital
murder defendant is not eligible for release on parole until the actual time
served by the defendant equals forty years regardless of good conduct
time.  See Act of May 8, 1999,
76th Leg., R.S., ch. 140, ' 1, 1999 Tex. Gen. Laws 600.

Legal Standard












Appellant did not object to the jury charge. Therefore,
error, if any, does not require reversal unless it was so egregious and created such harm that appellant was denied a fair trial.  See Almanza
v.
State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984);6917;6917.  Ordinarily, we
first would determine whether the jury charge is erroneous.  Hutch v. State, 922 S.W.2d 166, 170 (Tex.
Crim. App. 1996).  Then, if so, we would determine whether the
error in the charge resulted in egregious 
harm.  Id.  However, appellant does not assert that the
trial court erred or violated his constitutional rights in instructing the jury
with the statutorily mandated language. 
Rather, appellant asserts that his federal due process rights were
violated because the record purportedly shows a reasonable likelihood that the
jury applied the challenged instruction in a way that violates the United
States Constitution.  Federal due process
is violated if a review of the entire trial record and the challenged instruction
in the context of the whole charge show a reasonable likelihood that the jury
applied the instruction in a way that violates the United States
Constitution.  See Victor v. Nebraska, 511
U.S. 1, 6, 114 S. Ct. 1239, 1243, 127 L. E. 2d 583 (1994); Estelle v.
McGuire, 502 U.S. 62, 72, 112 S. Ct. 475, 482, 116 L. Ed. 2d 385 (1991); Luquis v. State,
72 S.W.3d 355, 366 (Tex. Crim. App. 2002). 
Appellant does not assert any other alleged egregious harm, and this
court should presume that such a due process violation would satisfy the Almanza
egregious harm standard.  See Almanza,
686 S.W.2d at171.  Appellant has not
asserted any violation of the Texas Constitution.

The majority opinion correctly cites Luquis for the
proposition that this court will not  find
federal constitutional error unless we conclude that a reasonable jury probably
was actually confused by the charge.[1] 
However, this statement may be misleading because the Luquis
opinion and the cases cited therein show that, while such confusion may be
necessary for a showing of this type of federal due process violation, it is
not sufficient for such a showing.  See
Victor, 511 U.S. at 6, 114 S. Ct. at 1243; McGuire, 502 U.S. at 72,
112 S. Ct. at 482; Luquis,
72 S.W.3d at 364B68.  In addition to establishing a
reasonable probability that the charge confused or misled the jury, appellant
also must demonstrate that the jury=s confusion or misunderstanding violated the United States
Constitution.[2] 












A.        Is there is a reasonable likelihood that the jury applied
the challenged instruction in a way that violates the United States
Constitution?












The record does not reflect that the jury speculated as to
when, if ever, appellant would be released on parole.  Presuming for the sake of argument that, as a
result of this instruction, the jury did so or that the jury considered the
effect of the parole laws on appellant in some other way that is allegedly
impermissible under Texas law, appellant has not cited and research has not
revealed any case holding that such action by the jury would violate the United
States Constitution.  See O=Dell v. Netherland, 521 U.S. 151, 159B66, 117
S. Ct. 1969, 1974B78, 138 L. Ed. 2d 351 (1997) (stating that in Simmons v. South
Carolina, 512 U.S. 154, 114 S. Ct. 2187, 129 L. Ed. 2d 133 (1994)
(plurality decision) (holding that due process requires capital murder
defendant be allowed to inform the jury that the alternative sentence to death
is life without parole, if applicable law so provides), Supreme Court created
the only exception to the rule that the federal constitution generally will not
interfere with a state=s decision regarding whether to inform the jury of
postsentencing legal eventualities); Caldwell v. Mississippi, 472 U.S.
320, 342, 105 S. Ct. 2633, 2646, 86 L. Ed. 2d 231 (1985) (O=Connor, J., concurring and concurring
in the judgment) (stating that Ramos does not suggest the United States
Constitution prohibits giving accurate instructions regarding postsentencing
procedures); California v. Ramos, 463 U.S. 992, 1001B1005, 1014, 103 S. Ct. 3446, 3453B55, 3460, 77 L. Ed. 2d 1171 (1983)
(holding that an instruction informing the jury that a defendant sentenced to
life in prison without parole could nonetheless be rendered parole eligible if
the Governor elected to commute his sentence did not violate the Eighth or
Fourteenth Amendments and stating that the wisdom of state statutes regarding
the jury=s consideration of the possibility of
commutation, pardon, parole, or clemency is best left to the States); Salazar v. Dretke, 419 F.3d 384, 390B91, 399, 403 & n.31 (5th Cir. 2005) (stating that no clearly established Supreme Court
authority holds that a defendant is entitled to a new trial when one juror
misstates the law of parole to other jurors during deliberations and stating
that there is no indication from the United States Supreme Court that a jury=s discussion of parole law runs
counter to any federal constitutional principle).  Although appellant asserts in his brief that
a state-court jury=s consideration of parole laws in assessing punishment
violates the United States Constitution, he cites no authority for this
proposition, and this proposition is incorrect. 
See O=Dell, 521
U.S. at 159B66, 117 S. Ct. at 1974B78; Caldwell, 472 U.S. at 342, 105 S. Ct. at 2646; Ramos, 463
U.S. at 1001B05, 1014, 103 S. Ct. at 3453B55, 3460; Salazar, 419 F.3d 384, 390B91, 399, 403 & n.31.  Therefore, this court should conclude there
is no reasonable likelihood that the jury applied the challenged instruction in
a way that violates the United States Constitution.  The record does not show that appellant
suffered egregious harm as a result of the trial court=s instructions regarding parole.





B.        How does a jury consider the existence of parole law but
not the manner in which parole law may be applied to the particular defendant
whose sentence the jury is assessing?





 

Appellant asserts that Texas juries
may not consider parole in assessing punishment and that the trial court=s jury instructions confused the
jurors and caused them to consider parole in assessing appellant=s punishment.  Although these issues might be relevant to a
challenge under the Texas Constitution, as discussed above, we need not address
these issues to dispose of appellant=s challenge under the United States
Constitution.  Nonetheless, discussing
these issues may be worthwhile because there is some confusion in the law.  












The fundamental law of Texas has been
changed by constitutional amendment to allow juries to learn of the effect of
parole eligibility on the period of incarceration to be served by a defendant
convicted of a criminal offense.  See
Oakley, 830 S.W.2d at 108B12.  However, even
after this change in Texas law, Texas courts of appeals have disagreed over the
extent, if any, to which juries may consider parole law in assessing
punishment.  See Chester v. State,
167 S.W.3d 935, 936B38 (Tex. App.CAmarillo 2005, pet. ref=d) (holding that trial court
reversibly erred in overruling objection to prosecutor=s closing argument, which stated that
Mr. Chester, if sentenced to twenty years, would not be eligible for parole
until his actual time served plus any good-conduct time equaled five years and
stating that the legislature has expressly prohibited juries from considering
parole in setting punishment); Nash v. State, __ S.W.3d __, __, 2005 WL
1605640, at *2B3 (Tex. App.CTexarkana July 11, 2005, pet. filed)
(holding that trial court correctly refused appellant=s counsel=s request to read the court=s instruction regarding parole to the
jury during closing argument because reading this part of the court=s charge would improperly ask the
jury to consider defendant=s parole eligibility); Stroud v. State, 2002 WL
31727251, at *5 (Tex. App.CEl Paso Dec. 5, 2002, no pet.) (stating that mandatory
article 37.07, section 4(a) instruction requires jury not to consider parole in
assessing punishment) (not designated for publication); Facundo v. State,
971 S.W.3d 133, 135B36 & n.1 (Tex. App.CHouston [14th Dist.] 1998, pet. ref=d) (indicating that article 37.07,
section 4(a) allows closing argument that Aa person@ sentenced to ten years= imprisonment will not be eligible
for parole until he actually serves five years but that it is improper to argue
that if you give AMr. Facundo@ a ten-year sentence, then he will not be eligible for parole
until he actually serves five years); Taylor v. State, 911 S.W.2d 906,
911B12 (Tex. App.CFort Worth 1995, pet ref=d) (same as Facundo); Dumesnil
v. State, 2002 WL 58825, at *5B7 (Tex. App.CHouston [14th Dist.] Jan. 17, 2002,
no pet.) (holding that trial court=s use of article 37.07, section 4(a)
instruction stating that defendant would be eligible for parole after serving
one-fourth of his sentence or fifteen years, whichever is less, was egregious
harm because defendant would not actually be eligible for parole until he had
served one-half of his sentence or thirty years, whichever is less, and because
this error actually harmed defendant by misleading the jury, during its
punishment deliberations into thinking that defendant would be eligible for
parole much earlier than he really would be) (not designated for publication); see
also Taylor, 911 S.W.2d at 914B15 (Dauphinot, J., concurring)
(stating that it is a legal fiction to instruct a jury on a defendant=s parole eligibility and then expect
the jury not to take it into account in assessing punishment).












A resolution to this uncertainty in
the case law may be found in two recent death-penalty cases.  See Ross v. State, 133 S.W.3d 618, 623B24 (Tex. Crim. App. 2004); Turner
v. State, 87 S.W.3d 111, 116B17 (Tex. Crim. App. 2002).  Although the instruction on parole
eligibility in article 37.071, section 2(e)(2) does not contain the language, AYou are not to consider the manner in
which the parole law may be applied to this particular defendant@ as do the instructions contained in
article 37.07, section 4(a), the trial courts in Ross and Turner added
similar language to the article 37.071, section 2(e)(2) instructions during the
penalty phase of the capital murder trial. 
Compare Tex. Code Crim.
Pro. art 37.07, ' 4(a) (Vernon Supp. 2005) with Tex. Code Crim. Pro. art 37.071, ' 2(e)(2) (Vernon Supp. 2005).  See Ross, 133 S.W.3d at 623B24; Turner, 87 S.W.3d at 116B17. 
In both Ross and Turner, the Court of Criminal Appeals stated
that it was proper for the jury to consider that Aa life-sentenced appellant@ would not be eligible for parole for
forty years.  See Ross, 133 S.W.3d
at 623B24; Turner, 87 S.W.3d at 116B17. 
Further, in Turner, the Court of Criminal Appeals pointed out
that, while the jury could consider a life-sentenced appellant=s parole eligibility, it should not
consider when, if ever, a life-sentenced appellant would be paroled after
becoming eligible for parole.  See
Turner, 87 S.W.3d at 116.  Although
these cases are capital murder cases and did not specifically involve article
37.07, section 4(a), it would be unreasonable and illogical to construe that
statute differently.  












Therefore, in cases involving an
article 37.07, section 4(a) jury instruction, the jury may base its assessment
of punishment in part on consideration of a sentenced defendant=s parole eligibility under the
formula contained in the instruction; however, a jury may not base its
assessment of punishment on speculation as to when, if ever, the defendant may
be released on parole after becoming eligible for parole.  See Ross, 133 S.W.3d at 623B24; Turner, 87 S.W.3d at 116B17; Dumesnil, 2002 WL 58825,
at *5B7 (indicating this construction of
article 37.07, section 4(a) in determining appellant suffered egregious harm as
a result of trial court=s use of article 37.07, section 4(a) instruction stating that
defendant would be eligible for parole after serving one-fourth of his sentence
or fifteen years, whichever is less, in case in which defendant would not
actually be eligible for parole until he had served one-half of his thirty-year
sentence, whichever is less).  Therefore,
the jury instruction in article 37.07, section 4(a) that the jury is Anot to consider the manner in which
the parole law may be applied to this particular defendant@ refers to speculation about when, if
ever, this particular defendant might be released on parole.  It does not refer to the jury=s consideration of a sentenced
defendant=s parole eligibility under the
formula contained in the instruction.  See
Ross, 133 S.W.3d at 623B24; Turner, 87 S.W.3d at 116B17; Dumesnil, 2002 WL 58825,
at *5B7; see also Hawkins v.
State, 135 S.W.3d 72, 74, 77B85 (Tex. Crim. App. 2004) (analyzing
trial court=s ruling on motion for mistrial in
case in which prosecutor improperly speculated that appellant would be released
on parole as soon as he was eligible).            This construction is consistent with
the Texas cases holding that the purpose of the article 37.07, section 4(a)
instructions is to produce longer sentences. 
See Grigsby v. State, 833 S.W.2d 573, 575B76 (Tex. App.CDallas 1992, pet. ref=d) (holding that trial court=s error in completely omitting
instructions mandated by article 37.07, section 4(a) was harmless because the
State benefits from these instructions, which are intended to increase jury
sentences); Parker v. State, 2004 WL 2113050, at *5B7 (Tex. App.CEl Paso Jan. 17, 2002, no pet.)
(holding that trial court=s use of article 37.07, section 4(a) instruction stating that
defendant would be eligible for parole after serving one-half of his sentence
or thirty years, whichever is less, harmless in case in which defendant
actually would be eligible for parole after serving one-fourth of his sentence
and noting that these instructions are intended to increase jury sentences, but
that the erroneous parole eligibility formula in that case favored defendant)
(not designated for publication).  












Nothing in our record indicates that
the jury improperly speculated as to when, if ever, appellant would be released
on parole.  The jury=s note asking about the difference
between a life sentence and a ninety-nine-year sentence as to length of term
does not indicate any such speculation. 
The jury note seems to indicate that the jury was considering the
existence of parole and the parole eligibility of a sentenced defendant;
however, this consideration is not improper.[3]  Because the jury note that appellant
emphasizes in his argument does not show that anything improper occurred during
jury deliberations, appellant=s argument has no merit.

 

/s/        Kem
Thompson Frost

Justice

 

Judgment rendered and Majority and
Concurring Opinions filed January 26, 2006.

Panel consists of Chief Justice Hedges and Justices
Anderson and Frost.  (Anderson, J.,
majority.)

 

Publish C Tex. R. App. P. 47.2(b).

 

 

 













[1]  See
ante, at p. 4 (citing Luquis, 72 S.W.3d at 366B67).  





[2]  The trial
court gave the following instruction regarding parole:

 

Under the law applicable in this case it is possible
that the length of time for which the defendant will be imprisoned might be
reduced by the award of parole.

 

Under the law applicable in this case, if the
defendant is sentenced to a term of imprisonment, he will not become eligible
for parole until the actual time served equals one‑half of the sentence
imposed or 30 years, whichever is less. 
Eligibility for parole does not guarantee that parole will be granted.

 

It cannot accurately be predicted how the parole law
might be applied to this defendant if he is sentenced to a term of
imprisonment, because the application of these laws will depend on decisions
made by prison and parole authorities.

 

You may consider the existence of the parole law.  However, you are not to consider the manner
in which the parole law may be applied to this particular defendant.

 

The trial court did not instruct the jury regarding
good conduct time, and this issue is not before us in this case.





[3]  There are many
cases, such as the instant case, in which a jury in a non-capital case sent out
a note that seems to be directed toward learning when a life-sentenced defendant
would be eligible for release on parole. 
See Tex. Code Crim. Pro.
art 37.07, ' 4(a), Tex.
Code Crim. Pro. art 37.071, '
2(e)(2).  See, e.g., Mason v. State,
2003 WL 1237947, at *7 (Tex. App.CSan
Antonio Mar. 19, 2003, pet. ref=d) (stating that jury note asked how much time is
served on a life sentence and a sentence for 75 years); Simmons v. State,
100 S.W.3d 484, 496 (Tex. App.CTexarkana 2003, pet. ref=d)
(stating jury sent out note asking about the difference between life and
ninety-nine year sentences); Perez v. State, 994 S.W.2d 233, 236 (Tex.
App.CWaco 1999, no pet.) (stating that jury asked for a
definition of life imprisonment); Nixon v. State, 940 S.W.2d 687, 691
(Tex. App.CEl Paso 1996, pet. ref=d)
(stating that jury sent out note asking what parole eligibility would be for a
life-sentenced defendant).  The reason
for this frequent inquiry may be that the article 37.07, section 4(a)
instructions do not make clear how much time a life-sentenced defendant must
serve before being eligible for parole.  See Tex.
Code Crim. Pro. art 37.07, ' 4(a).