

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| QUINN CRUZ, JR., | § | No. 08-14-00058-CR |
| Appellant, | § | Appeal from |
| v. | § | 205th District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC # 20060D00581) |
| | § | |

## **O P I N I O N**

This appeal arises out of an incident in which Appellant murdered his girlfriend, Tonya West, and her unborn fetus, on the morning of November 18, 2005, outside of their apartment complex. A grand jury originally indicted Appellant for the capital murder of West and her unborn fetus by shooting West with a firearm. On September 27, 2007, a jury found Appellant guilty of capital murder as charged in the indictment. On appeal, we reversed Appellant's conviction, holding that the evidence was legally insufficient to show that Appellant had the specific intent to kill the unborn child, as required for a conviction of capital murder. *See Cruz v. State*, No. 08-08-00213-CR, 2010 WL 2949292 at *2-3 (Tex.App.--El Paso July 28, 2010, pet. ref'd)(not designated for publication). We reformed the judgment to reflect a conviction for the murder of West only and remanded the cause for a new punishment hearing. *Id.* at *11. On

remand, a jury assessed Appellant's sentence at life in prison with a fine of $10,000. This appeal

follows.

## IMPROPER JURY ARGUMENT

### References to Parole

In Issue One, Appellant complains of the following excerpts of the prosecutor's closing

arguments:

[Prosecutor]: This is, ladies and gentlemen of the jury, such a clear-cut case of life in prison. It's not black and white. It is not coming in here and just, with no regard to the evidence, asking you to send somebody to life in prison. It is because the evidence continues to justify it, over and over and over again. We are asking for life because it is just. *He was going to take his own, and he didn't.*

The last thing I want to make sure you understand is that we are asking for life, and it is a life with parole. You are no--What the law tells you in this jury charge is you may consider that. You may consider that at some point he will be eligible for parole. So it's not life without parole. *This man will be eligible for parole. This man would be eligible. Even with your life sentence, he would be eligible to get out.*

What you can't do is predict when he would get the parole. But you may consider that even with a life sentence, he is still eligible to get out.

[Defense counsel]: Objection, Your Honor. Improper argument.

[The Court]: Overruled.

[Prosecutor]: On behalf of the State of Texas, we want to thank you. By no means are we saying that we don't understand that this would be a difficult decision. But it is the right decision. It is a just decision. It is a decision that is completely backed up by the evidence. We are not asking willy-nilly for life in prison. We are asking that you follow through what his original intent was. *He was going to kill her and take his own life.* He deserves. Justices requires. This family deserves. Tonya West deserves.

[Defense counsel]: Objection, Your Honor. Improper argument.

[The Court]: Overruled.

[Prosecutor]: Tonya West deserves justice, and the community's safety deserves life.

2

[Emphasis added].

In his first point of error, Appellant complains that the prosecutor's closing arguments about parole were improper. While we agree that the statements were improper, we conclude they were harmless. The law provides that it is acceptable to quote or paraphrase the court's charge during argument. *Perez v. State*, 994 S.W.2d 233, 237 (Tex.App.--Waco 1999, no pet.). This includes paraphrasing or explaining the parole law instruction in the charge. *Id.* However, it is improper for a prosecutor to apply the parole law specifically to the defendant during jury argument. TEX.CODE CRIM.PROC.ANN. art. 37.07, § 4(a)(West 2015); *Perez*, 994 S.W.2d at 237. The jury is only permitted to consider the concept of parole eligibility in general. TEX.CODE CRIM.PROC.ANN. art. 37.07, § 4(a). A thin, tenuous line exists between "paraphrasing" and "applying" parole law to a particular defendant. *Perez*, 994 S.W.2d at 237.

The State relies on *Taylor v. State*, in which the court upheld the prosecutor's closing argument which commented on how parole-eligibility rules worked with 40-, 60-, and 75-year sentences. 233 S.W.3d 356, 359 (Tex.Crim.App. 2007). The Court of Criminal Appeals reiterated its holding in *Hawkins v. State*, 135 S.W.3d 72, 84 (Tex.Crim.App. 2004) that a prosecutor may accurately restate the law given in the jury charge. In applying *Hawkins* to the facts in *Taylor*, the court explained that the prosecutor did not convey any information beyond what was properly contained in the charge when he explained the parole eligibility rules. *Taylor*, 233 S.W.3d at 359. The court found that the prosecutor's explanation simply ensured that the jury understood the language set out in the instructions. *Id.* It also chose not to ascribe any significance to the prosecutor's passing use of the words "defendant" and "he" in the course of giving his explanation. *Id.*

3

However, that is not the case here. The prosecutor explained the parole laws and then explained to the jury how that application would be applied to this particular defendant. The prosecutor said: "This man will be eligible for parole. This man would be eligible. Even with your life sentence, he would be eligible to get out." She essentially encouraged the jury to assess the State's desired sentence, a life sentence, based on the parole information. This argument encouraged the jury to consider the effects of parole on Appellant's punishment and therefore was improper.

Having decided that the prosecutor's comments constituted improper argument, we must now determine if this error was harmful. Because the error here involves the trial court's application of a Texas statutory right, rather than a constitutional right, we utilize Rule 44.2(b) of the Texas Rules of Appellate Procedure. TEX.R.APP.P. 44.2(b); *see Espinosa v. State*, 29 S.W.3d 257, 259 (Tex.App.--Houston [14th Dist.] 2000, pet. ref'd); *McGowen v. State*, 25 S.W.3d 741, 745 (Tex.App.--Houston [14th Dist.] 2000, pet. ref'd); *Moore v. State*, 868 S.W.2d 787, 789 (Tex.Crim.App. 1993). Under Rule 44.2(b), we utilize a three-part test to determine if the argument was harmful: (1) the severity of the conduct as evidenced by the prosecutor's argument (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) the measures adopted to cure the misconduct; that is, the effect of any cautionary instruction given by the court; and (3) the certainty of conviction absent the misconduct. *Martinez v. State*, 17 S.W.3d 677, 692-93 (Tex.Crim.App. 1998), *citing Mosley v. State*, 983 S.W.2d 249, 259 (Tex.Crim.App. 1998).

Here, the prejudicial effect on Appellant was minor. Even though the prosecutor's comments improperly referenced Appellant and attempted to apply the parole law to his situation, the comments were more than likely an attempt to explain the parole law as outlined in the charge, rather than an underhanded and premeditated attempt to invite the jury to consider

4

Appellant's eligibility for parole in sentencing him. Regarding the second factor, no curative measures were taken by the trial court because it overruled Appellant's objection.

As to the certainty of the conviction, this error occurred at the punishment stage. Nevertheless, we consider the likelihood that Appellant would have received a lesser sentence if the improper comments had not been made. We find that the prosecutor's misconduct had little, if any, effect in light of the punishment assessed. The jury heard an extensive amount of evidence regarding Appellant's commission of the crime. Several eyewitnesses testified that they either saw Appellant shoot West with a gun or heard gunshots and then saw West lying on the ground. Shortly after turning himself in to the police, Appellant directed them to the firearm's location where he disposed of it. Nearby, police recovered an empty cigarette pack which contained 9-millimeter rounds of ammunition and two empty 10-shot Glock magazines that matched the firearm used to shoot West. The police later discovered that Appellant flew from Commerce City, Colorado, to El Paso, Texas, arriving in El Paso the morning of murder. Appellant wrote several letters dated the day before the murder, wherein he gave away all his possessions to friends and family; asked them to pay all of his bills with the money in his bank account; and asked a friend to send a $10,000 check from his bank account to his parents. One letter in particular, addressed to his parents, stated that, "This is a war I must finish. I am going to kill her one way or another." Evidence was also introduced that approximately one month before the murder, Appellant threatened West. A police report documented Appellant's threats made to West:

> [H]e would kill her anytime he wanted; he would cut off her fucking head; If you want a war, you got a war; I'm going to kill you. Trust me, I am; You're going to die, don't you know; Two to three minutes to chop off your head. Then you'll know I'm serious; I will find you and I will kill you in two minutes with no problem and just leave.

5

The medical examiner testified that West's death was a result of a homicide due to multiple gunshot wounds causing her to bleed to death. West sustained a total of four bullet wounds. Considering this evidence, it is unlikely that the jury would have sentenced Appellant to less time had the prosecutor's comments not been made. Accordingly, we find that the improper jury argument did not have a substantial effect on the jury's verdict. *Fowler v. State*, 958 S.W.2d 853, 866 (Tex.App.--Waco 1997, *aff'd*, 991 S.W.2d 258 (Tex.Crim.App. 1999). Issue One is overruled.

### References to Suicide and a Fine

In his second point of error, Appellant similarly complains that the prosecutor's references to his intent to commit suicide and her discussion of imposing a fine as part of his sentence constituted improper jury argument. The thrust of his contention is that the arguments introduced new and harmful facts (that the jury should impose a fine because Appellant had the ability to work while incarcerated) and were extremely inflammatory (discussing Appellant's intent to commit suicide). Proper jury argument falls into four specific categories: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to argument by opposing counsel, and (4) plea for law enforcement. *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex.Crim.App. 1973); *Van Zandt v. State*, 932 S.W.2d 88, 92 (Tex.App.--El Paso 1996, pet. ref'd). To properly preserve a complaint about improper jury argument, the defendant must: (1) object; (2) request an instruction to disregard; and (3) move for mistrial. *Auguste v. State*, No. 08-99-00303-CR, 2002 WL 475226 (Tex.App.--El Paso Mar. 29, 2002, no pet.)(not designated for publication), *citing Harris v. State*, 784 S.W.2d 5, 12 n.4 (Tex.Crim.App. 1989), *cert. denied*, 494 U.S. 1090, 110 S.Ct. 1837, 108 L.Ed.2d 966 (1990). Moreover, the defendant must object each time the prosecutor makes an improper argument, or else the complaint is waived.

*Ethington v. State*, 819 S.W.2d 854, 858 (Tex.Crim.App. 1991). This rule applies even if the argument is egregious and an instruction to disregard would not have cured the harm caused by the improper argument. *Valencia v. State*, 946 S.W.2d 81, 82-83 (Tex.Crim.App. 1997)(op. on reh'g). With regard to the prosecutor's statements that the jury should also impose a $10,000 fine because Appellant has the ability to work while incarcerated, Appellant failed to move for mistrial after the trial court sustained his objection and instructed the jury to disregard the statement. Accordingly, because Appellant did not pursue his objection to an adverse ruling, he has waived his contentions regarding that statement on appeal. *McFarland v. State*, 989 S.W.2d 749, 751 (Tex.Crim.App. 1999).

Concerning the prosecutor's comments on Appellant's intent to commit suicide, we find that the comments were both a proper summation of the evidence and a reasonable deduction therefrom. The defendant in *Hill v. State*, 647 S.W.2d 306, 308 (Tex.App.--Corpus Christi 1982, pet. ref'd), similarly wrote a letter referencing his possible murder-suicide which was admitted into evidence. The prosecutor later referenced the defendant's murder-suicide in his final jury arguments. *Id.* The court held that it was not improper for the prosecutor to include such a reference since the letter was admitted into evidence. *Id.* It is well established that counsel may, during final argument, draw from facts in evidence any inferences that are reasonable, fair, and legitimate. *Id.*; *see also Vaughn v. State*, 607 S.W.2d 914, 922-23 (Tex.Crim.App. 1980); *Antwine v. State*, 572 S.W.2d 541 (Tex.Crim.App. 1978); *Wyatt v. State*, 566 S.W.2d 597 (Tex.Crim.App. 1978); *Griffin v. State*, 554 S.W.2d 688 (Tex.Crim.App. 1977).

Here, Appellant wrote several letters that were admitted into evidence. A letter addressed to his friend, Tony Cerrone, stated:

> If you are reading this, then you probably know something really f---ed up happened while I was in El Paso.

7

You and Edgar are like brothers to me and I will never forget all that you have done for me. I sincerely 'thank you' and wish the best of luck to you both. But before I go, there a few things I need you to do, just until my parents are notified. Well, I'm jotting a list of things that will make things easier for my parents in the long run.

Hopefully my parents will come down to Colorado and figure out what they want to do with my belongings.

Other than that, I hope this isn't too stressful. More than likely, I hope you never get to read this. But in case you do, then I thank you for being a great friend. Take care, bro. I'll miss you, man.

A letter addressed to his parents stated:

This is a war I must finish. I am going to kill her one way or another. I am hurting pretty bad and want this pain to end as well. I am not well physically or mentally right now. The only way I'll have a piece of mind is to do what she did to me. She used and betrayed me for money. Now I must settle the score, live or die. I don't want to go to jail, so I'd rather end my suffering now.

Mom and Dad, take good care of yourselves and know that I will always love and miss you both. Till we meet that one day. I love you. Thanks for everything. Love, Jun.

A final letter addressed to his friend, Edgar Nevarrez, stated:

Anyhow, I'm also giving you the PSP, no charge fool, with all accessories. You can give the iPod to Luly as a gift from me. You can also have the golf clubs, which is in my storage. Other than that, I wish you all the best of luck. Take care and I appreciate all the help you've given. Your bro, Quinn.

Clearly, the prosecutor's references to Appellant's possible plans to commit suicide are supported by the record which includes the above letters. The reference to murder-suicide was not improper, but was rather a legitimate inference that could be drawn from the facts of the case. Accordingly, we overrule Issue Two in its entirety.

## PROSECUTORIAL MISCONDUCT

During the prosecutor's cross-examination of Appellant, the following exchange occurred:

8

[Prosecutor]: That's what you want to tell this jury why she's not here?

[Appellant]: Yes.

[Prosecutor]: All right. And so she's not here because she pulled a gun and threatened you.

[Appellant]: (Moving head up and down).

[Prosecutor]: She's not here to defend herself because it's her own fault.

[Appellant]: So I should be the one that's--Would you rather I be dead? Are you saying that? Because I've heard it from many people that rather I be dead, then for someone to say, "Well, you know what? At least it's not you. You're still alive.

[Prosecutor]: Are you asking me what I want, where I want you to be?

[Appellant]: Because you're going to--

[Prosecutor]: Are you going to ask me questions? Because I'll tell you where I want you to be. I want you to be in prison the rest of your life, sir. I don't want you to be dead.

[Defense counsel]: Objection. Side bar, Your Honor.

[The Court]: That will be sustained. Just ask him questions.

[Defense counsel]: You Honor, I would ask if the Court could please instruct the jury to disregard that last comment by the prosecutor.

[The Court] That will be overruled.

Later on during the same cross-examination, the following exchange occurred:

[Prosecutor]: And you kill her and shoot her in front of her baby? Yes?

[Appellant]: (Moving head up and down).

[Prosecutor]: And you're so remorseful.

[Appellant]: Yes, ma'am, I am.

[Prosecutor]: Oh, I see it.

[Appellant]: I am.

9

[Defense counsel]: I'm going to object to the side bar again, You Honor.

[The Court]: Sustained. Ladies and gentlemen of the jury, you'll disregard that last remark.

In Issue Three, Appellant complains that the prosecutor's two sidebar remarks made while cross-examining Appellant constituted prosecutorial misconduct. He also argues that these remarks taken together with the allegedly improper jury arguments amount to an atmosphere that was so flagrant so as to constitute prosecutorial misconduct which denied Appellant due process of law. We disagree.

"Side bar remarks are remarks of counsel that are neither questions to the witness nor comments addressed to the court." *Brokenberry v. State*, 853 S.W.2d 145, 152 (Tex.App.--Houston [14th Dist.] 1993, pet. ref'd). Usually, one or two instances of improper side bar remarks, even uncured, do not amount to a denial of a fair trial. *See Jimenez v. State*, 298 S.W.3d 203, 214 (Tex.App.--San Antonio 2009, pet. ref'd). As a general rule, an instruction to disregard will cure an objectionable comment, including a side bar remark, unless the comment is so inflammatory that its prejudicial effect cannot be removed by the admonishment. *Furtado v. State*, No. 08-00-00230-CR, 2001 WL 959437 (Tex.App.--El Paso Aug. 23, 2001, pet. dism'd)(not designated for publication); *Cooks v. State*, 844 S.W.2d 697, 727 (Tex.Crim.App. 1992), *cert. denied*, 509 U.S. 927, 113 S.Ct. 3048, 125 L.Ed.2d 732 (1993). Moreover, in order to obtain reversal of a judgment based on an improper side bar comment, Appellant here must prove the side bar remark interfered with his right to a fair trial. *Brokenberry*, 853 S.W.2d at 152; *In re W.G.W.*, 812 S.W.2d 409, 416 (Tex.App.--Houston [1st Dist.] 1991, no writ).

We cannot agree that these two sidebar comments alone or even in conjunction with the alleged improper jury arguments discussed above amount to such flagrant misconduct that

Appellant was denied a fair trial. Additionally, the trial court's instruction to disregard the prosecutor's remarks cured any error that may have occurred. Accordingly, we overrule Appellant's third issue.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his fourth point of error, Appellant contends that he received ineffective assistance of counsel because his trial attorney failed to clarify to juror M.A., who later became the presiding juror, whether he could consider probation in this case. We find Appellant's argument without merit.

We follow the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), to determine whether a defendant received ineffective assistance of counsel. In order to prevail on an ineffective assistance of counsel claim, Appellant must show that: (1) his attorney's performance was deficient; and (2) that his attorney's deficient performance prejudiced his defense. *Smith v. State*, 286 S.W.3d 333, 340 (Tex.Crim.App. 2009); *Vasquez v. State*, 830 S.W.2d 948, 949 (Tex.Crim.App. 1992). Under the first prong, the attorney's performance must be shown to have fallen below an objective standard of reasonableness. *Perez v. State*, 310 S.W.3d 890, 893 (Tex.Crim.App. 2010); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex.Crim.App. 1999). Namely, Appellant must prove that his attorney's conduct fell below the professional standard. *Perez*, 310 S.W.3d at 893; *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex.Crim.App. 2002). Under the second prong, Appellant must establish that there is a reasonable probability that but for his attorney's deficient performance, the outcome of his case would have been different. *See Strickland*, 466 U.S. at 694, 104 S.Ct. at 2069; *Thompson*, 9 S.W.3d at 812. "Reasonable probability" is that which is "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; *Jackson v. State*,

11

973 S.W.2d 954, 956 (Tex.Crim.App. 1998). If this two-pronged test is not satisfied the ineffective assistance of counsel claim is defeated. *Rylander v. State*, 101 S.W.3d 107, 110-11 (Tex.Crim.App. 2003).

On review, we presume that the attorney's representation fell within the wide range of reasonable and professional assistance. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex.Crim.App. 2001), *citing Tong v. State*, 25 S.W.3d 707, 712 (Tex.Crim.App. 2000). Ineffective assistance claims must be firmly founded in the record to overcome this presumption. *Thompson*, 9 S.W.3d at 813. In most cases, this task is very difficult because the record on direct appeal is undeveloped and cannot reflect trial counsel's failings. *Id.* at 813-14. Where, as here, the record is silent and fails to provide an explanation for the attorney's conduct, the strong presumption of reasonable assistance is not overcome. *Rylander*, 101 S.W.3d at 110-11. We do not engage in speculation in order to find ineffective assistance when the record is silent as to an attorney's trial strategy. *Robinson v. State*, 16 S.W.3d 808, 813 n.7 (Tex.Crim.App. 2000). Accordingly, when the record lacks evidence of the reasoning behind trial counsel's actions, trial counsel's performance cannot be found to be deficient. *Rylander*, 101 S.W.3d at 110-11; *Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994).

Jurors must be able to consider the full range of punishment for the crime as defined by the law in order to qualify as a juror during the punishment phase of a trial. *Sadler v. State*, 977 S.W.2d 140, 142 (Tex.Crim.App. 1998). "They must be able, in a sense, to conceive both of a situation in which the minimum penalty would be appropriate and of a situation in which the maximum penalty would be appropriate." *Id.*; *Fuller v. State*, 829 S.W.2d 191, 200 (Tex.Crim.App. 1992), *cert. denied*, 508 U.S. 941, 113 S.Ct. 2418, 124 L.Ed.2 640 (1993).

During voir dire, Appellant's trial counsel inquired into whether the prospective jurors would be able to consider the full range of punishment for a murder sentence, including the possibility of probation. When asked row by row, several jurors responded that they could never consider the option of probation for a murder conviction. Juror M.A. was not one of those prospective jurors. Instead, juror M.A only asked Appellant's trial counsel whether it was possible to serve time in both prison and probation. Appellant's trial counsel did not answer this question. The record here does not indicate that juror M.A. was incapable of considering the full range of punishment from probation to life imprisonment. Rather, the record exhibits that juror M.A. was a qualified juror capable of considering the full range of punishment, as he did not raise his hand and respond when trial counsel specifically inquired into the issue. Appellant contends that if his trial counsel had clarified that jurors must be able to consider probation without prison for someone who is convicted of murder, the potential prejudicial effect of the State's argument would have been lessened. However, the record reflects that Appellant's trial counsel did make such clarifications:

> [Trial defense counsel]: But you have to be able to consider it. You have to be able to consider probation and then decide whether or not you want to give it, discuss it with your fellow jurors.

On this record, we find that Appellant has failed to establish his ineffective assistance of counsel claim. We overrule Issue Four and affirm the judgment of the trial court below.

June 8, 2016

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)

13